836 A.2d 485 (2003)
Christian K. WASHINGTON, Defendant Below, Appellant,
v.
STATE of Delaware, Plaintiff Below, Appellee.
No. 694,2002.
Supreme Court of Delaware.
Submitted: September 3, 2003.
Decided: November 3, 2003.
Edmund M. Hillis, Office of the Public Defender, Wilmington, for Appellant.
John Williams, Department of Justice, Dover, for Appellee.
Before VEASEY, Chief Justice, HOLLAND, BERGER, STEELE and JACOBS, Justices, constituting the Court en Banc.
*486 VEASEY, Chief Justice:
In this appeal we consider whether a defendant's convictions for two counts of first degree robbery and two counts of possession of a firearm during the commission of a felony were multiplicitous and therefore constituted double jeopardy on the ground that they related to a single course of criminal conduct. Although the defendant's actions were in close proximity temporally and spatially, we have determined on this record that the defendant engaged in separate, distinct acts and formed separate intents to commit each crime. Because the defendant's actions did not constitute a single, continuous course of conduct, principles of multiplicity and double jeopardy are not implicated. Therefore, we affirm the judgment of the Superior Court.

Facts
On the evening of April 18, 2001, the victim, Jamal Miller, decided to visit a friend, Latisha Seals. Miller drove to Seals' house, parked his car near the house, and knocked on the door. When an unidentified female answered the door, Miller observed Seals and the defendant, Christian Washington, descending the steps with a pit bull dog. Seals had a cast on her arm. When Miller asked what had happened, Washington pushed Seals back and stepped outside, questioning Miller about why he had come to the house. Miller replied that he had come to visit Seals. Washington then pulled out a gun, holding it within a few inches of Miller's face. Miller backed away and pleaded with Washington not to shoot him. Washington repeatedly told Miller to leave, which Miller attempted to do, but Washington's dog pursued him each time he moved away.
Washington continued pointing his gun at Miller. When Miller was approximately twenty to forty feet away from Seals' house, Washington demanded that Miller give him a silver chain that Miller had around his neck. Miller complied. Washington donned the chain and then again *487 ordered Miller to leave. Miller again tried to flee, but each time he did, Washington's dog pursued him. Washington then commanded the dog to "hit" Miller, and the dog latched onto Miller's leather jacket. Still holding the gun near Miller's face, Washington ordered Miller to give him the jacket. Miller complied. Washington again told Miller to leave. When Miller attempted to run to his car, Washington demanded that Miller give him the keys to the car. By this time, Washington and Miller were approximately fifty or sixty feet from where Washington had taken Miller's silver chain. Approximately ten or twenty seconds had passed since Washington had taken Miller's jacket.
Washington was indicted on two counts of Robbery First Degree. Count I was for taking Miller's chain and Count III was for taking the keys. Washington was also indicted on two counts (Counts II and IV) of Possession of a Firearm During the Commission of a Felony in connection with the two robbery charges. Before trial, Washington filed a motion to dismiss Counts III and IV because they duplicated Counts I and II and therefore violated Washington's right against double jeopardy. The Superior Court denied the motion. A jury convicted Washington of Counts I through IV, and he received the minimum mandatory sentence for each count, to be served consecutively.

Issue on Appeal
Washington argues that the second count of Robbery First Degree and the second count of Possession of a Firearm During the Commission of a Felony (and the minimum mandatory sentences imposed for each) are multiple charges for the same offense and are therefore multiplicitous and violate the Double Jeopardy Clause of the United States and Delaware Constitutions.[1] He contends that his actions constituted one continuous course of criminal conduct because they occurred in close spatial and temporal proximity to one another and because the crime involved only one victim, one weapon, and one perpetrator. This Court reviews de novo a claim of infringement of constitutional rights.[2]

Multiplicity and Double Jeopardy
We reject Washington's claim that his actions constituted a single course of criminal conduct. His acts were sufficiently separated in location and time to constitute distinct acts. Moreover, he formed distinct intents to take each different item of property. We therefore hold that Washington's acts may be treated as separate and distinct crimes. Accordingly, his convictions and sentencing did not violate his constitutional rights.
The constitutional principle of double jeopardy protects a defendant against (1) successive prosecutions; (2) multiple charges under separate statutes requiring proof of the same factual elements; and (3) multiple charges under the same statute.[3] Washington's claim relates to the third type of protection, known as the "multiplicity" doctrine. Dividing one offense into multiple counts of an indictment violates a defendant's right against double jeopardy.[4] This may occur when *488 "[p]rosecutors ... manufacture additional counts of a particular crime by the `simple expedient of dividing a single crime into a series of temporal or spatial units.'"[5] Washington contends that his convictions and sentencing implicate the multiplicity doctrine because his conduct constituted a single, continuous act for which he may properly be convicted only once.

First Degree Robbery
Washington's argument that his conduct constituted a single, continuous act fails because he made distinct threats, separated in both time and space, against Miller, each intended to compel Miller to surrender different items of property. In addition, the record indicates that Washington formed the intent to take Miller's car keys separately from forming the intent to take Miller's silver chain.[6] The separation in time and space were small, but when considered along with the evidence indicating Washington's formation of a distinct intent, they are sufficient to support multiple convictions without implicating the multiplicity doctrine.
In State v. Roderick,[7] the defendant challenged his conviction for two counts of robbery in connection with a robbery of a Radio Shack store. The State had charged the defendant with robbery of the store and robbery of the store's salesclerk. The defendant contended that the charges were multiplicitous because the robbery constituted a single, continuous criminal act.[8] The Superior Court held that the two charges were for separate offenses because the robber separately threatened the clerk to compel him to deliver the store's property and the clerk's own property. Similarly, Washington ordered Miller to turn over his keys after Miller had already relinquished his silver chain.
In Wyant v. State,[9] this Court upheld a defendant's conviction for two counts of rape and one count of attempted rape where the sexual acts were committed against a single victim within a single residence and a relatively short time period. While on the first floor of the residence, the defendant attempted to rape the victim by anal intercourse and then raped her vaginally.[10] The defendant then forced the victim upstairs, where he forced her to have sexual intercourse with him again.[11] The Court rejected the defendant's argument that his actions constituted one continuous criminal act.[12] Considering the *489 timing and physical movement of the victim between the sexual acts, the Court held that the defendant properly could be convicted of both attempted rape and rape.[13] As in the present case, the facts in Wyant do not indicate any significant passage of time between the separate acts other than the time required to move from one area of the home to another. In addition, the spatial distance in Wyant was only that space separating the second floor from the first floor of the same residence. Here, Washington and Miller had moved approximately fifty or sixty feet from where Washington took Miller's chain to where he took the car keys.
In addition to Washington's making distinct, spatially and temporally separated threats to Miller, the evidence indicates that he formed the intent to take Miller's keys after he had already taken the chain and the leather jacket. After Washington took Miller's jacket, he told Miller to leave. As Miller started to run toward his car, Washington said "No. F* * * that. Give me your keys." This statement, immediately following an order for Miller to leave, indicates that Washington changed his mind and then formed, for the first time, an intent to take Miller's keys.
In Williams v. State,[14] this Court held that the multiplicity doctrine barred a defendant's conviction for two counts of possession of cocaine with intent to deliver drugs that were found in his car near his apartment and drugs that were found in his apartment. The Court based its decision on several factors: (1) all the drugs were discovered during the same police confrontation, (2) all the drugs were found in the same general location, and (3) Williams "`displayed only a single intent and goal  distribution.'"[15] One scheme to distribute drugs may be complex and may occur over an extended period of time but still involve only one intent to distribute. In the present case, however, the evidence indicates that Washington had completed one robbery  the taking of the silver chain  before he formed a separate intent to take the car keys.[16] The separate convictions for two counts of robbery are therefore proper.
Robbery is a violent crime against the person of the victim. Therefore, the multiplicity doctrine implications applicable to robbery are more akin to those arising in sexual assault cases than in cases involving property-oriented crimes. In a recent arson case, this Court held that multiple convictions relating to the same course of conduct violated the multiplicity doctrine because arson, as defined by the General Assembly, is primarily a crime *490 against property.[17] The State charged the defendant with two counts of arson because the defendant had known when he set a single fire in a mobile home that two other people were inside.[18] The Court analyzed the legislative purpose underlying the arson statute and decided that the General Assembly had intended that arson would be a "single crime regardless of how many human victims it threatens or claims."[19] Thus, arson is primarily a property crime, with first degree arson increasing the severity of the charges and punishment because of the arsonist's creating a general risk to human life.[20]
In contrast to arson, the language of the robbery statute demonstrates that robbery is primarily a crime of physical violence against a person. Although robbery involves the taking of property, the legislature's concern in enacting the robbery statute was with violence and intimidation. Even second degree robbery is defined by the use or threat of force against a victim.[21] The severity of the crime increases to first degree robbery when that threat or use of force carries a greater risk of actual harm to a victim because of the display of what appears to be a deadly weapon.[22]
In Le Compte v. State,[23] this Court held that imposition of consecutive sentences for a defendant's convictions for first degree robbery and for possession of a firearm during the commission of a felony, where both charges related to the same conduct by the defendant, did not violate the Double Jeopardy Clause. The Court decided that the legislative purposes behind the two statutes differed and that the statutes addressed separate crimes for which the State was required to prove different elements. In the Court's view, the General Assembly enacted the weapons statute to attempt to deter the availability of a weapon during the commission of a serious crime, in order to decrease the danger to victims. That is, the statute attempts to address the increase in the *491 actual risk to victims.[24] The first degree robbery statute, on the other hand, targets the victims' experience of intimidation and violence: "The first degree robbery statute covers the interaction between the aggravating circumstances created by the defendant's conduct and the perceptions of the victim."[25] Thus, the robbery statute seeks to address the personal well-being of the victim, rather than simply the protection of property.
Cases involving violent crimes have held that a defendant may be convicted of more than one count of a crime if the defendant's acts are sufficiently separated in time and space. Courts also consider whether a defendant formed separate intents to commit the acts for which he was convicted. Washington's actions were separated by at least fifty or sixty feet, similar to the distance between the defendant's acts in Wyant, where the Court upheld a defendant's separate convictions for raping his victim on the first and second floors of a residence. Less than one minute elapsed between Washington's actions, so the timing factor does not give great weight to the conclusion that the acts were distinct.[26] The evidence indicates, however, that Washington formed separate intents to take Miller's car keys and Miller's silver chain. Even if we discount the temporal factor, the spatial and intent factors together support the separate convictions. Washington's conviction for two counts of first degree robbery was therefore proper and did not infringe his double jeopardy protection.
Washington contended that his convictions were multiplicitous because they related to a single course of criminal conduct. Washington raised this issue in a post-trial motion that asserted his double jeopardy rights. In deciding that issue, this Court and the trial judge had to consider whether there are facts in the record that would support independent convictions by a rational jury. The inquiry is similar to the analysis used by this Court and trial judges in considering whether to allow a jury to consider multiple counts of unlawful sexual conduct or multiple counts of crimes that involve restraint.[27] The better practice is for defense counsel to raise such contentions in a motion before the case is submitted to the jury. If the trial judge makes an independent determination that sufficient evidence has been submitted to support separate convictions, defense counsel can ask for a jury instruction *492 on those factual issues or the trial judge may sua sponte decide to give such an instruction.[28]

Firearm Possession
Washington's conviction for two counts of possession of a firearm during commission of a felony was also proper. If Washington properly could be convicted of two counts of robbery, then two distinct felonies occurred, during each of which Washington possessed a firearm. We therefore uphold those convictions as well.

Conclusion
Accordingly, the judgment of the Superior Court is AFFIRMED.
NOTES
[1] See U.S. CONST. amend. V ("[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb...."); DEL. CONST. art. 1, § 8 ("[N]o person shall be for the same offense twice put in jeopardy of life or limb....").
[2] Williamson v. State, 707 A.2d 350, 362 (Del. 1998).
[3] Williams v. State, 796 A.2d 1281, 1285 (Del. 2002).
[4] Feddiman v. State, 558 A.2d 278, 288 (Del. 1989).
[5] Handy v. State, 803 A.2d 937, 940 (Del. 2002).
[6] See Williams, 796 A.2d at 1286-87 (considering separation in time and space and the formation of distinct intents as factors in determining whether a defendant has committed two violations of the same statute).
[7] No. IN-82-03-1964, 1982 WL 593179, at *1 1982 Del.Super. Lexis 1098, at *1 (Del.Super.Ct. Nov. 30, 1982).
[8] Id. at *1, 1982 Del.Super. Lexis 1098, at *1-2. The court noted the special importance of a correct resolution of the issue because of the mandatory minimum sentence imposed for first degree robbery. Id. at *1, 1982 Del.Super. Lexis 1098, at *3.
[9] 519 A.2d 649 (Del.1986).
[10] Id. at 652.
[11] Id.
[12] The defendant did not argue that the multiple convictions and sentences violated any constitutional right. Instead, he asserted that they violated DEL. CODE ANN. tit. 11, § 206(a)(2), which prohibits conviction for a lesser included offense or an attempt to commit an offense if the defendant is convicted of the completed offense. Wyant, 519 A.2d at 661. In Feddiman v. State, 558 A.2d 278, 288 (Del.1989), however, this Court upheld the defendant's convictions for eight counts of unlawful sexual intercourse in the first degree as not violating the multiplicity doctrine. The defendant kidnapped his victim and then raped her in various places throughout Sussex County over the course of approximately six hours. Id. at 280-81. The Court upheld the convictions as not multiplicitous because

"[a] person who commits multiple sexual assaults upon the same victim may be held responsible for, and punished for, each separate and distinct act," albeit a violation of the same statute. One is not allowed to "take advantage of the fact that he has already committed one sexual assault on the victim and thereby be permitted to commit further assaults on the same person with no risk of further punishment for each assault committed. Each act is a further denigration of the victim's integrity and a further danger to the victim."
Id. at 289 (citation omitted). The Court considered the timing and physical movement between the sexual acts and decided that the defendant's actions constituted separate violations of the statute for which he properly could be convicted. Id.
[13] Wyant, 519 A.2d at 661.
[14] 796 A.2d 1281 (Del.2002).
[15] Id. at 1286-87 (quoting Rashad v. Burt, 108 F.3d 677, 681 (6th Cir.1997)).
[16] For some reason, Washington was not charged with robbery of Miller's jacket.
[17] Handy v. State, 803 A.2d 937, 939 (Del. 2002). The Court stated:

Because the basis of the crime of arson is directed to the property, the existence of inhabitants is one element in fixing the degree of arson. If the State wishes to prosecute a defendant in connection with an arson in which the defendant intended to harm, or actually did harm, multiple victims in a single fire, only one charge of arson is permissible. Other charges may be appropriate for multiple crimes of harm to persons such as attempted murder ... or murder, depending on the facts.
[18] Id.
[19] Id. at 943.
[20] Id.
[21] See DEL. CODE ANN. tit. 11, § 831 (2001) ("A person is guilty of robbery in the second degree when, in the course of committing theft, the person uses or threatens the immediate use of force upon another person ...."). The General Assembly's definition of other crimes involving the taking of property, such as theft, without reference to the use or threat of force against a person further demonstrates robbery's focus on the violence and intimidation involved when a human victim is present during an unlawful taking of property. Cf., e.g., DEL. CODE ANN. tit. 11, § 841(a) ("A person is guilty of theft when the person takes, exercises control over or obtains property of another person intending to deprive that person of it or appropriate it.").
[22] See DEL. CODE ANN. tit. 11, § 832 (increasing robbery to a class B felony when the robber, among other things, (1) "Causes physical injury to any person who is not a participant in the crime"; (2) "Displays what appears to be a deadly weapon"; or (3) "Is armed with and uses or threatens the use of a dangerous instrument").
[23] 516 A.2d 898 (Del.1986).
[24] Id. at 902.
[25] Id. at 903 (emphasis added).
[26] But cf. Gregory v. State, No. 278,2000, 782 A.2d 264, 2001 WL 874766, 2001 Del. Lexis 316 (Del. July 25, 2001) (ORDER). In Gregory, the defendant was convicted, among other things, of assault and attempted murder. The defendant hit his victim in the head with a baseball bat, demanding return of some of defendant's property that he suspected the victim had stolen. When the victim asserted that she had not taken the property, the defendant shot her in the head and neck. The defendant argued that "his continuous course of conduct, spanning only a few minutes, constituted one offense and that his assault conviction should have been merged into the attempted murder conviction." Id. at *1, 2001 Del. Lexis 316, at *2-3. The Court rejected this argument:

Gregory beat [the victim] with a baseball bat while demanding that she return his drugs and money. When that approach did not work, Gregory put down the bat and put a gun to [the victim's] head and shot her. Gregory engaged in two distinct acts and the short time span between those acts does not change the fact that they were different acts punishable as separate offenses.
Id. at *1, 2001 Del. Lexis 316 at *3.
[27] E.g., Feddiman v. State, 558 A.2d 278, 287-89 (Del.1989); Weber v. State, 547 A.2d 948, 959 (Del.1988).
[28] Feddiman, 558 A.2d at 290; Weber, 547 A.2d at 959.