**Mustafa WHITFIELD, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 156,2004.

Supreme Court of Delaware.

Submitted: Nov. 17, 2004.
Decided: Dec. 29, 2004.
Rehearing Denied Feb. 4, 2005.

Joseph M. Bernstein, Esquire, Wilmington, Delaware, for appellant.

Elizabeth R. McFarlan, Esquire and Gregory E. Smith, Esquire, Department of Justice, Wilmington, Delaware, for appellee.

Before HOLLAND, JACOBS and RIDGELY, Justices.

HOLLAND, Justice.

The defendant-appellant, Mustafa Whitfield and co-defendants, Emmanuel Robinson and Akeem Coleman were jointly indicted on the following charges: (I) Attempted Robbery in the First Degree; (II) Possession of a Firearm During Commission of a Felony; (III) Assault in the Second Degree; (IV) Possession of a Firearm During Commission of a Felony ("PFDCF"); (V) Reckless Endangering in the First Degree; (VI) Possession of a Firearm During Commission of a Felony ("PFDCF"); (VII) Wearing a Disguise During Commission of a Felony; (VIII) Conspiracy in the Second Degree; and (IX) Possession of a Deadly Weapon by a Person Prohibited ("PDWPP"). Following a joint trial by jury, all of the defendants were convicted of all of the charges except Counts II and IX, as to which all of the defendants were found "not guilty."

Whitfield has raised three issues on appeal. First, he contends that the trial judge should have granted his Motion for Acquittal. Whitfield argues that the offenses of Reckless Endangering and Assault in the Second Degree (and the accompanying weapons charges) are "included" in the offense of Attempted Robbery in the First Degree and did not constitute separate offenses. Second, Whitfield submits the question whether the offenses of Reckless Endangering, Assault in the Second Degree (and the accompanying weapons charges) and Attempted Robbery in the First Degree constituted a single offense or separate multiple offenses should have been sub-

mitted to the jury and that the trial court abused its discretion in refusing to instruct the jury pursuant to this Court's decision in *Washington v. State*.[1] Third, Whitfield argues that the verdicts returned by the jury were inconsistent and amounted to "compromise verdicts" which are invalid as a matter of law.

We have concluded that each of the issues raised by Whitfield is without merit. Therefore, the judgments of the Superior Court must be affirmed.

### Procedural History

At the close of the prosecution's case, Whitfield made an oral and then written motion for judgment of acquittal. The Superior Court reserved decision on the motion for judgment of acquittal. The matter continued to the defendants' case-in-chief. The jury returned verdicts in which Whitfield (as well as his two co-defendants) were found guilty of: Attempted Robbery in the First Degree; Assault in the Second Degree; Wearing a Disguise During the Commission of a Felony; two counts of PFDCF; Reckless Endangering in the First Degree; and Conspiracy in the Second Degree. The jury acquitted all three co-defendants of PDWPP and one count of PFDCF.

Whitfield moved for a new trial. That motion alleged one ground for relief: that the jury's verdicts represented a compromise verdict which was the product of coercion and the court's decision to give the jury an *Allen* charge over the defendants' objection. Whitfield's motion for a new trial was denied.

Following a pre-sentence investigation, the Superior Court sentenced Whitfield to: seven years at Level V, suspended after four years for decreasing levels of supervision on the count of Attempted Robbery;

four years at Level V, suspended after one year for decreasing levels of supervision on the count of Assault Second; three years at Level V on one count of PFDCF; three years at Level V, suspended immediately for decreasing levels of supervision on the count of Reckless Endangering; three years at Level V on the second count of PFDCF; two years at Level V, suspended immediately on the count of Wearing a Disguise During the Commission of a Felony; and two years at Level V, suspended immediately on the count of Conspiracy.

### Facts

Anthony Meek arrived home at about 11:30 p.m. on October 14, 2002. He parked his Chevy Cavalier behind his house. While parking the car, Meek noticed three black males walking around the corner heading toward him. Two of the males had something wrapped around their faces.

The three men came around the front of Meek's car while he was getting out of it. One of the men, the one without anything covering his face, was holding a black semiautomatic handgun. The gunman told Meek to "Give up the keys."

When Meek began arguing, the gunman told one of the other men to grab the keys. Meek was holding the keys in his hand. As the man grabbed for the keys, Meek wrapped his arm around the man's neck and a struggle ensued. Meek tripped and the two of them fell back on the curb. The third assailant tried to pull his companion off of Meek while telling the gunman to shoot. The gunman fired toward Meek and the three would-be robbers took off running.

Meek began to chase his assailants. As they were running down the street, the gunman turned and fired at Meek again.

---

1. *Washington v. State*, 836 A.2d 485 (Del. 2003).

Meek immediately felt pain in his foot and gave up the chase. Meek was subsequently treated at the hospital for a gunshot wound to his foot.

At about 11:50 p.m., two Wilmington police officers spotted three black males running a few blocks away. As the police approached to question the men, two of them jumped over a six-foot high brick wall and ran away. The third man, Akeem Coleman, was stopped and a black 9mm handgun was retrieved from the sidewalk near where Coleman was taken into custody. The shell casings found near Meek's car were later shown to have been fired by that gun.

About five to ten minutes after Coleman was taken into custody, police saw two black men, one without a shirt, walking toward an apartment complex a few blocks from where the men had gone over the wall. Believing it odd that the men were not wearing coats in the cold weather and were sweating, the police suspected that these were the two men who had fled. The police stopped the two men who were identified as Mustafa Whitfield and Emmanuel Robinson. A white t-shirt found near Meek's car contained DNA that matched that of Robinson.

At trial, Whitfield testified in his own defense, explaining that he was on his way to meet a girl he had met on a chat line at an apartment building near where he was detained. Whitfield said that he had run into Robinson shortly before being approached by police. Coleman and Robinson elected not to testify.

■ Whitfield and his co-defendants were each charged with several criminal offenses as a result of their attempt to rob

Meek. At trial, and on appeal, Whitfield argues that the Attempted Robbery in the First Degree, Assault in the Second Degree and Reckless Endangerment in the First Degree convictions constituted a single offense of Attempted Robbery in the First Degree rather than three distinct offenses. Whitfield also contends that all of the related weapons offenses should be merged into the attempted robbery offense.

The Superior Court found that the evidence was sufficient to support separate charges for attempted robbery, assault and reckless endangerment. The Superior Court also determined that permitting separate convictions for the weapons offenses relating to the underlying felony offenses was supported by the evidence and the prior decisions of this Court. We have concluded that both of those determinations are correct.

■ Whitfield submits that his actions on the night of October 14–15 constitute a continuous course of conduct for which he may properly be convicted only once. It is well-established that "prosecutors may not manufacture additional counts of a particular crime by the 'simple expedient of dividing a single crime into a series of temporal or spatial units.'"[2] However, where a defendant's actions are "sufficiently separated in location and time" and where the defendant formed "distinct intents," that conduct can constitute distinct criminal acts.[3]

### Acquittal Motion Properly Denied

It is unnecessary to address Whitfield's arguments that these crimes would constitute lesser-included offenses if the charges were attributable to a single

2. *Handy v. State*, 803 A.2d 937, 940–41 (Del. 2002) (quoting *Brown v. Ohio*, 432 U.S. 161, 169, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977)).

3. *Washington v. State*, 836 A.2d 485, 487 (Del. 2003); *Feddiman v. State*, 558 A.2d 278 (Del. 1989).

criminal act. The record reflects that Whitfield and his co-defendants committed three distinct offenses during a continuum of criminal activity. Therefore, we conclude that Whitfield could properly be charged and convicted of all three offenses.

Whitfield and his co-defendants initially attempted to rob Meek of his car. As the three men approached Meek, Coleman displayed a handgun and directed Meek to relinquish the keys to his car. Accordingly, the record reflects the three men attempted to rob Meek by depriving him of his property through the threat of force, i.e., Attempted Robbery in the First Degree.

Meek refused to give up his keys and shouted at the would-be robbers. Coleman then told one of his confederates to take the keys. Meek resisted and a struggle ensued. Meek put his arm around the neck of his assailant and used the man as a shield. The third would-be robber separated the struggling men. Coleman then fired a shot in Meek's direction. At this point, the State submits, Coleman was no longer trying to rob Meek, but was trying to protect his confederates. The record supports the State's assertion that, when Coleman shot at Meek, it was a distinct act that could properly be charged as a separate offense, i.e., Reckless Endangerment in the First Degree.

After the shot was fired, the fight broke up. The three would-be robbers fled the scene. Meek began to chase them. As all four men were running down the street, Coleman turned and fired at Meek, hitting him in the foot. This shot was separated by several minutes and occurred some distance away from the scene of the original attempted robbery.

The State submits that wounding Meek was a separate offense. The record supports the State's position. Coleman had to consciously decide to stop and shoot at Meek, with an intention of inflicting physical injury. At that point, the attempted robbery was over. The keys to Meek's car were lying on the street. When Coleman fired the second shot that hit Meek in the foot, the record reflects that it was a separate and distinct criminal act, i.e., Assault in the Second Degree.

The Superior Court properly concluded "there's a perfectly logical basis, in fact, for the three separate charges." Under the facts of this case, the two shots fired by Coleman constituted two additional criminal offenses and should not be merged with the attempted robbery offense. The record reflects that the three charged offenses of attempted robbery, reckless endangering and assault were all separate and distinct criminal actions.

### Jury Instruction Discretionary

■ Whitfield's second argument is that, as a result of this Court's decision in *Washington*,[4] he was entitled to a jury instruction permitting the jury to determine whether the counts of Attempted Robbery in the First Degree, Assault in the Second Degree, and Reckless Endangering in the First Degree were separate offenses or part of the same conduct. In *Washington*, this Court stated that "[i]f the trial judge makes an independent determination that sufficient evidence has been submitted to support separate convictions, defense counsel can ask for a jury instruction on those factual issues or the trial judge may *sua sponte* decide to give such an instruction."[5] Whitfield's trial at-

---

4. *Washington v. State*, 836 A.2d 485, 491–92 (Del.2003).

5. *Id.* at 491–92.

torney made such a request, which the trial judge denied.

In denying Whitfield's motion for a judgment of acquittal, the Superior Court explained why it was exercising its discretion to deny Whitfield's request for a jury instruction based upon the *Washington* decision:

> With regard to this motion for judgment of acquittal, I think that the defendants misread *Washington.* The judgment of acquittal on Assault Second and Reckless Endangering on the grounds that the crimes were a single course of conduct, not distinct acts, which permitted multiple counts. The testimony of the victim provides separate convictions of Robbery First and Assault Second. The Robbery First allegedly occurred near the victim's car. When he was told to give up his keys, he resisted, a scuffle ensued and a firearm was discharged. The three perpetrators could not have foreseen the victim would chase them. Consequently, no perpetrator formed the state of mind a second time until the situation arose. When the victim gave chase—the victim gave chase and one of the perpetrators turned and fired a second time.
>
> It is the second firing which forms the basis for the charge of Assault in the Second Degree.
>
> There's a factual issue as to whether the victim was injured at that final time or at the time of the first shot or at the time of the second shot.
>
> He said he didn't feel any pain in his foot—until the second shot was fired, but he had been able to run until that point. . . .

> There was a separation of the two incidents between time and some place. There's also a factual basis for a separate intent for the intent to shoot a second time, which could not have been formed until the victim undertook to pursue the perpetrators.
>
> I'm not going to give any instruction that's related to the *Washington* case. . . .
>
> So I think that there's a perfectly logical basis, in fact, for the three separate charges.
>
> There's reason here. There's no double jeopardy issue[s]. And really the simplest explanation that the State argued is this isn't multiple counts of the same crime. These are different crimes. It is not this scenario where there are multiple acts of rape or multiple acts of robbery, such as the *Washington* case was.

Our holding in *Washington* did not mandate giving the jury instructions at issue whenever a request is made by defense counsel.[6] In this case, the Superior Court provided a logical legal and factual basis for denying Whitfield's requested jury instruction. That instruction was not required by our holding in *Washington* and, under the facts of this case, the Superior Court's decision to deny Whitfield's request constituted a proper exercise of its discretion.

### *Jury's Verdicts Reflect Lenity*

■ Whitfield submits the verdicts that were returned in this case were impermissible "compromise verdicts;" that is verdicts which result "from the surrender by

---

6. *Washington v. State,* 836 A.2d 485 (Del. 2003). *Compare Weber v. State,* 547 A.2d 948, 959 (Del.1988) (holding that "in every case when a defendant is charged with kidnapping in conjunction with an underlying crime, a specific instruction requiring the jury to find that the movement and/or restraint is independent of and not incidental to the underlying crime is mandatory.").

some jurors of their conscientious convictions in return for some like surrender by the others."[7] Such verdicts are invalid.[8]

■ In examining "compromise verdict" claims, this Court conducts a two-part analysis. First, we must determine whether the jury verdicts are inconsistent as a matter of law. Second, if the verdicts are legally inconsistent, we must determine whether the outcome could have been the result of jury lenity, in which case the verdicts will remain undisturbed.[9]

The jury found all three defendants guilty of Attempted Robbery in the First Degree. To do so, the jury necessarily had to find that the defendants "threatened the immediate use of force upon Meek with intent to prevent or overcome resistance to the taking of property" or that they displayed what appeared to be a deadly weapon. The evidence that Coleman displayed a gun was not disputed. Thus, the State's evidence established the elements of Attempted Robbery in the First Degree. It is not logical for the jury to find that the elements of Attempted Robbery in the First Degree had been proved, yet to find the defendants "not guilty" of possessing the same handgun during the commission of Attempted Robbery in the First Degree, as charged in Count II.

■ Although the jury found the defendants "not guilty" as to Count II, the jury found the defendants "guilty" of two counts of PFDCF in Counts IV and VI. Nevertheless, the jury found all of the defendants "not guilty" of PDWPP in Count IX, even though it was undisputed

that all of the defendants were under the age of 18. The "not guilty" verdicts as to Counts II and IX are not logical in light of the guilty verdicts as to Counts IV and VI.

Whitfield argues that "the only logical explanation for the verdict is that some of the jurors traded votes. They agreed to vote 'guilty' as to some or all of the charges in which guilty verdicts were returned in exchange for 'not guilty' votes on the remaining charges. By definition, that is a compromise verdict which must be set aside."

The State acknowledges apparent inconsistencies in the jury's verdicts. Nevertheless, the State submits that the Superior Court properly concluded the logical inconsistencies in the jury's verdicts did not invalidate the remaining convictions because the judgments of acquittal constituted a demonstration of jury lenity. This Court has recognized the phenomenon of jury lenity and has upheld convictions that are part of arguably logically inconsistent judgments of acquittal.

In *Brown v. State*,[10] for example, the jury convicted the defendant of PFDCF but acquitted him of the underlying felony, robbery.[11] In affirming the weapons conviction this Court held that no requirement existed that a defendant be convicted of the underlying felony in order to uphold a firearm offense.[12] In support of the proposition that a defendant may be convicted of one crime while the jury simultaneously acquits him of another logically connected crime, we relied upon prior decisions of

7. *Wilson v. State*, 305 A.2d 312, 317 (Del. 1973).

8. *Id.*

9. *See Davis v. State*, 706 A.2d 523, 525 (Del. 1998).

10. *Brown v. State*, 729 A.2d 259 (Del.1999).

11. *Id.* at 266.

12. *Id.*

this Court and the United States Supreme Court addressing the issue of jury lenity.[13]

■ In *Davis*,[14] this Court considered legally inconsistent jury verdicts in which a defendant was convicted of delivery and distribution of a narcotic within one thousand feet of a school, but was acquitted of possession with intent to deliver.[15] In *Davis*, we attempted to reconcile the incongruous verdicts, but concluded that regardless of the logical inconsistencies, when a jury's verdicts can be explained by jury lenity the conviction will be sustained.[16] "Even if a defendant is convicted of a compound offense predicated upon a lesser offense, of which the defendant is acquitted, the verdict will stand so long as there was sufficient evidence in the record to support a conviction of the lesser offense." [17]

Our holdings in *Brown* and *Davis* both relied upon this Court's decision in *Tilden*.[18] The State charged the defendant in *Tilden* with two counts of Robbery in the First Degree and two counts of PFDCF.[19] The jury convicted the defendant of both weapons charges, but then convicted only of the lesser-included offense of Robbery in the Second Degree.[20] In affirming Tilden's inconsistent convictions, this Court determined that the Superior Court had properly considered the verdicts to be an exercise of jury lenity.[21]

In Whitfield's case, the jury had deliberated for approximately three hours when they came back into the courtroom and began a recitation of its verdicts that started with a response of "hung" as to the first charge. The Superior Court then provided an approved *Allen* charge in which it specifically directed the jurors not to surrender their conscientious convictions. Approximately one hour-and-a-half later, the jury returned with its verdicts. In denying the defendants' motion for new trial, the Superior Court stated:

> [I]t seemed to me there was enough language in our standard instruction against any coercive effect, did not suggest to me there was any coercive effect, did not suggest to me there was any coercive effect or vote trading when it took them another hour and a half before they reached a verdict. This case was relatively simple. The most complicated thing about the case was there were three defendants, but the evidence was very strong, the State's evidence, because the individual, three defendants, were found in relatively close proximity to the events, shortly after they occurred. And there w[ere] certainly other factors that implicated each of them.

The facts in Whitfield's case are analogous to the proceedings reviewed by this Court in *Wilson*. In *Wilson*, the jury reported that they were unable to reach a verdict.[22] The trial judge instructed the jurors to return to their deliberations, but

---

13. *Id.* (citing *Tilden v. State*, 513 A.2d 1302 (Del.1986), and *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984)).

14. *Davis v. State*, 706 A.2d 523 (Del.1998).

15. *Id.* at 525.

16. *Id.*

17. *Id.*

18. *Tilden v. State*, 513 A.2d 1302 (Del.1986).

19. *Id.* at 1305.

20. *Id.*

21. *Id.* at 1307.

22. *Wilson v. State*, 305 A.2d 312, 317 (Del. 1973).

simultaneously emphasized that no juror should surrender his or her conscientious convictions.[23] In *Wilson*, the jurors then spent an additional hour deliberating and returned a verdict of guilty as to one count of Conspiracy, but failed to render a unanimous verdict on remaining count.[24] In rejecting the claim that the verdicts represented a compromise, this Court concluded that "[t]his speculation [regarding the inconsistency of the verdict] is useless, however; the pertinent point is that their verdict shows a finding that all three appellants participated in planning the attack."[25]

In *Tilden*, this Court held that "the controlling standard for testing a claim of inconsistent verdicts is the rule of jury lenity now approved coupled with the sufficiency of evidence standard."[26] In Whitfield's case, the prosecution presented sufficient evidence to support each of the charges of which the jury convicted Whitfield. Since the State presented sufficient evidence to establish the basis for the crimes of which the jury found Whitfield guilty, the convictions will stand despite their apparent inconsistency with the verdicts acquitting Whitfield on other charges.[27]

The record reflects that the inconsistent verdicts can be explained as a product of jury lenity. Therefore, contrary to Whitfield's assertion, the jury's verdicts did not amount to an illegal compromise.[28] The Superior Court correctly denied Whitfield's motion for a new trial.

### Conclusion

The judgments of the Superior Court are affirmed.

---

23. *Id.*

24. *Id.*

25. *Id.*

26. *Tilden v. State,* 513 A.2d 1302, 1307 (Del. 1986).

27. *Id.*

28. *See Wilson v. State,* 305 A.2d 312, 317 (Del.1973).