Shuron SPENCER, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

No. 60,2004.

Supreme Court of Delaware.

Submitted: Feb. 2, 2005.
Decided: March 1, 2005.

Bernard J. O'Donnell, Esquire, Office of the Public Defender, Wilmington, Delaware; for Appellant.

Elizabeth R. McFarlan, Esquire, Department of Justice, Wilmington, Delaware; for Appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

JACOBS, Justice.

Shuron Spencer, the defendant in a Superior Court criminal action, appeals from his conviction and from the Superior Court's denial of Spencer's motion for acquittal of two counts of second degree assault, two counts of possession of a deadly weapon during the commission of a felony ("PFDCF"), and one count of possession of a deadly weapon by a person prohibited. Although Spencer concedes that he shot the victim twice, he claims that the shootings constituted one continuous criminal act rather than two distinct assaults. Spencer therefore concludes that he could not properly be charged with two counts of assault and two counts of PFDCF. Because there are sufficient facts in the record for a rational trier of fact to conclude that Spencer formed two distinct intents to shoot the victim, we affirm the convictions.

### Factual Background

The charges against Spencer arose from a shooting that occurred at a gas station on March 7, 2003. The victim, Lamar Scott, was pumping gas when Spencer emerged from a car. Spencer began arguing with Scott and then shot Scott in the right knee. When Scott turned and began to move away, the defendant then shot Scott in the right buttock. Four to six seconds elapsed between the two shots.

Spencer was later arrested and charged with two counts of assault, for each of the two times he shot Scott. Spencer was also charged with two counts of PFDCF, for the two assaults he committed. At trial, Spencer moved to dismiss one count of assault and one count of PFDCF, arguing that the two shots were part of one continuous criminal act and that charging Spencer with two separate assaults violated his constitutional prohibition against Double Jeopardy. Spencer also argued that because he was properly chargeable with only one count of assault, he could only be charged with only one count of PFDCF.

The Superior Court concluded that a criminal intent to shoot a victim could be formed in an instant, and that each time Spencer pulled the trigger he formed a separate intent to harm Scott. Therefore, the Court held, Spencer had committed two distinct felonies because he shot and injured Scott twice and that before each shot, Spencer had formed a separate criminal intent.

### Analysis

■ Spencer claims that the separation of his actions into two distinct counts of assault violated his constitutional right against Double Jeopardy, which prohibits the State from dividing a single criminal act into multiple counts of the same offense.[1] This Court reviews *de novo* a claimed infringement of constitutional rights.[2] In deciding whether Spencer could properly have been charged and convicted of two counts of assault and two counts of PFDCF, this Court must determine whether there are facts of record that would support separate, independent convictions by a rational jury.[3]

■ The Constitutional protection against Double Jeopardy is intended to

---

1. U.S. Const. Amend. V; Del. Const. Art. I, § 8.

2. *Washington v. State,* 836 A.2d 485, 487 (Del. 2003); *Williamson v. State,* 707 A.2d 350, 362 (Del.1998).

3. *Washington,* 836 A.2d at 491.

protect a defendant from successive prosecutions for the same crime, from multiple charges under separate statutes requiring proof of the same factual events, and from multiple charges under the same statute.[4] Spencer invokes the third of these protections, which is commonly referred to as the "multiplicity doctrine."[5] Under the multiplicity doctrine, the State may not split a single offense into more than one count by dividing the crime into a series of temporal or spatial units.[6]

This Court has held that a defendant may be convicted of more than one count of a crime without violating the multiplicity doctrine if the defendant's actions are sufficiently separate in time and location to constitute distinct acts.[7] That inquiry is fact-intensive. There is no bright-line rule for determining how much time must elapse or how much spatial separation must exist between two criminal acts for those acts to constitute separate offenses. The critical inquiry is whether the temporal and spatial separation between the acts supports a factual finding that the defendant formed a separate intent to commit each criminal act.

In *Williams v. State*, for example, this Court found that there was no evidence that the defendant had formed more than a single intent to distribute drugs, merely because the police found drugs in two separate locations on his property.[8] The *Williams* defendant had been charged with two counts of possession of cocaine with intent to deliver after the police found

one stash of drugs in his apartment and one stash of drugs in the car parked outside the apartment. This Court concluded that the two counts were multiplicitous, because (i) the defendant constructively possessed all the drugs at the same time, (ii) the drugs were discovered in the same general location during the same police confrontation, and (iii) there were no facts that showed the defendant had more than a single intent to distribute the drugs.[9]

In *Feddiman v. State*, this Court concluded that the defendant could be charged with eight counts of unlawful sexual intercourse because the defendant raped the victim multiple times and there was sufficient evidence that the defendant had formed multiple intents to rape her.[10] We held that the multiplicity doctrine was not violated, because (i) the defendant had transported the victim to different locations during the course of the assaults,[11] (ii) the defendant had forced her to perform several different types of sexual acts, and (iii) the assaults had occurred over the course of six hours. Thus, the temporal and spatial separation between the offenses supported a finding that the *Feddiman* defendant had formed multiple intents to rape his victim.[12]

In *Washington v. State*, we concluded there was sufficient evidence that the defendant had formed two separate intents to rob the victim and could therefore be charged with two counts of robbery with-

---

4. *Id.* at 487.

5. *Id.*

6. *Handy v. State*, 803 A.2d 937, 940 (Del. 2002).

7. *Washington*, 836 A.2d at 487, 491.

8. 796 A.2d 1281 (Del.2002).

9. *Id.* at 1287.

10. 558 A.2d 278 (Del.1989).

11. The defendant drove to a number of different locations, and at each location he forced the victim to perform one or more sexual acts.

12. *Feddiman*, 558 A.2d at 289.

out violating the multiplicity doctrine.[13] In *Washington*, the defendant stole the victim's silver chain and his car keys. There was a twenty to thirty second gap between the time the defendant took the first item and the time he took the second. This Court found that the evidence of record supported the conclusion that the defendant had completed the first robbery (taking the silver chain) before he formed a separate intent to take the victim's car keys. As part of its analysis, the Court noted that in the course of those twenty or thirty seconds the defendant took the chain from the victim, told the victim to leave the premises, but then appeared to change his mind and demanded that the victim give him the keys to the victim's car.[14]

Most recently, in *Whitfield v. State*,[15] we affirmed the denial of a motion for acquittal. There, we held that the record established that the three offenses for which the defendant had been charged and convicted—attempted robbery, reckless endangerment, and assault—were separate and distinct offenses that were not attributable to a single criminal act. In that case, the defendant and his confederates first tried to rob the victim of his car keys. The victim resisted and a struggle ensued, in the course of which one of the assailants shot at the victim. The fight then broke up, after which the victim chased the would-be robbers, who were fleeing the scene. During the chase, one of the defendants turned and fired at the victim, hitting him in the foot. Because that shot was separated by several minutes and occurred some distance away from the scene of the original attempted robbery, the evidence clearly established that the attempted robbery, the first (missed) shot, and the second (successful) shot constituted separate and distinct criminal acts.

 In this case, although the temporal and spatial separation between the first and second shot was small, that separation was sufficient to support a finding that Spencer had formed a separate intent to harm Scott between the two gun shots. Scott turned his back to Spencer after the first shot, as evidenced by both the pictures (introduced at trial) of the crime taking place and by the fact that Scott was shot in the buttocks. The evidence of record is sufficient for a rational trier of fact to conclude that the intent Spencer had formed to shoot Scott in the leg was distinct from the intent he formed thereafter to shoot Scott in the buttocks after Scott turned his back to run away from his assailant.

Spencer's conviction for two counts of PFDCF must also stand. Because the jury properly concluded that Spencer had committed two distinct felonies, he could properly be convicted for possessing a firearm during each separate felony.[16]

We note for future reference, that in rejecting Spencer's acquittal motion, the Superior Court relied in part upon the fact that Spencer inflicted multiple injuries on Scott. The fact of multiple injuries, without more, does not conclusively establish that the accused formed separate intents that would support separate charges for the same offense. Nonetheless, such evidence, when combined with other evidence, may be probative of a finding that the defendant formed a separate intent before inflicting each injury. Here, the totality of the evidence was sufficient for a rational jury to conclude that Spencer

**13.** 836 A.2d at 487.

**14.** *Id.* at 489.

**15.** 867 A.2d 168 (Del.2004).

**16.** *Id.* at 492.

formed separate intents to harm Scott each time before shooting him. Accordingly, the Superior Court properly denied Spencer's motion for judgment of acquittal, and the convictions must stand.

### Conclusion

The judgment of the Superior Court is affirmed.