IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JOSHUA MCGRIFF, | § | |
| | § | No. 180, 2022 |
| Defendant Below, | § | |
| Appellant, | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. 2005005295 (N) |
| STATE OF DELAWARE, | § | |
| | § | |
| Appellee. | § | |

Submitted: December 12, 2022
Decided: January 27, 2023

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## ORDER

After consideration of the appellant's Supreme Court Rule 26(c) brief, the State's response, and the record on appeal, it appears to the Court that:

(1) On November 18, 2021, a Superior Court jury found the appellant, Joshua McGriff, guilty of two counts of attempted first-degree rape, two counts of first-degree kidnapping, and one count of third-degree assault. After granting McGriff's motion for motion for judgment of acquittal on the kidnapping charges and merging the attempted rape convictions for sentencing, the Superior Court sentenced McGriff to fifty-one years of Level V incarceration, suspended after thirty-six years for Level III probation. This is McGriff's direct appeal.

(2)     The evidence presented at trial established that, on the morning of May 19, 2020, then seventeen-year old Mitchell Gardner[1] was walking to his job on Market Street. As he was walking, McGriff approached him, told him he was pretty, and asked for his phone number. Gardner did not engage with McGriff. He hoped to lose McGriff on his way to work, but McGriff stayed with him.

(3)     As they approached the side of a building that was occupied by FideliTrade Incorporated, McGriff grabbed Gardner and pulled him back to the truck bay area of the building. McGriff started punching and kicking Gardner. He also threw Gardner up against the brick wall of the building. As McGriff attacked Gardner, he told him to be quiet and that everything would be okay.

(4)     Gardner offered McGriff money, approximately $20.00, to make him stop. McGriff took the money, but told Gardner that was not what he was after. Gardner then offered to perform oral sex on McGriff in an attempt to stop the attack. McGriff said that was not what he wanted either. During the attack, Gardner ended up face down on the ground. McGriff got on top of Gardner, pulled down Gardner's underwear and pants, and began touching Gardner's buttocks. McGriff pulled down his own pants as well. Shortly thereafter police arrived and arrested McGriff.

(5)     The area where McGriff and Gardner were struggling was under video surveillance by FideliTrade. Nelson Ghee, Jr., who worked for FideliTrade as a

---

[1] This Court has *sua sponte* assigned the victim a pseudonym under Rule 7(d).

safety and security advisor, was responsible for monitoring FideliTrade's security cameras. On the morning of May 19, he noticed what appeared to be two men fighting in the truck bay area of the building and called 911. When Ghee zoomed the camera in closer, he realized that an older man was attacking a younger man and trying to kiss him. He then saw the attacker pull down the victim's pants.

(6) Unwilling to stand by and watch a sexual assault, Ghee went outside to where the attack was occurring. As he approached the men on the ground, Wilmington police arrived on the scene. Ghee testified that the younger man was very upset, bleeding from the mouth, and crying. Ghee gave the police a copy of the surveillance footage showing the attack and arrest. The 911 call and surveillance footage were played for the jury.

(7) Wilmington police officer Akquil Williams arrived on the scene shortly after the 911 call. He saw two men on the ground. Williams observed that one man had a bloody mouth, his pants pulled down to his knees, and was crying. Williams identified the other man as the aggressor. Williams pulled out his taser and ordered the aggressor to stay on the ground. In the courtroom, Williams picked out McGriff as the man he had identified as the aggressor on May 19.

(8) Wilmington police officers Guy DeBonaventura and Lawrence Mattic arrived on the scene shortly after Williams. DeBonaventura took McGriff into custody. He found $21.00 and a State-issued identification card with McGriff's

3

name and photograph in the back pocket of McGriff's pants. DeBonaventura gave the money to Gardner after he advised that he had given the money to McGriff. Mattic took photographs of the crime scene. Both DeBonaventura and Mattic identified McGriff in the courtroom as the person arrested on May 19.

(9) An ambulance took Gardner to the hospital where photographs were taken. Gardner testified that he had a busted lip and headache as a result of the attack. The photographs of Gardner's injuries were admitted into evidence.

(10) McGriff testified that he was not the man in the video who attacked Gardner and was arrested by the police. He said he was heading to work on May 19 when the police suddenly arrested him as he was waiting for a bus in Claymont. In the process of arresting McGriff, the police obtained his State-issued identification card.

(11) The jury found McGriff guilty of two counts of attempted first-degree rape, two counts of first-degree kidnapping, and one count of third-degree assault. The jury found McGriff not guilty of theft. McGriff's filed a motion for judgment of acquittal on the first-degree kidnapping charges, which the State did not oppose. The Superior Court granted the motion.

(12) For sentencing purposes, the Superior Court merged McGriff's attempted first-degree rape conviction under 11 *Del. C.* § 773(a)(2) with his

4

attempted first-degree rape conviction under 11 *Del. C.* § 773(a)(1).[2] The Superior Court sentenced McGriff as follows: (i) for attempted first-degree rape, effective May 19, 2020, fifty years of Level V incarceration, suspended after thirty-six years for two years of Level III probation; and (ii) for third-degree assault, one year of Level V incarceration, suspended for one year of Level III probation.

(13) On appeal, McGriff's appellate counsel ("Counsel") filed a brief and a motion to withdraw under Supreme Court Rule 26(c). Counsel asserts that, based upon a complete and careful examination of the record, there are no arguably appealable issues. Counsel informed McGriff of the provisions of Rule 26(c) and provided McGriff with a copy of the motion to withdraw and the accompanying brief.

(14) Counsel also informed McGriff of his right to identify any points he wished this Court to consider on appeal. McGriff has raised points for this Court's consideration. The State has responded to the Rule 26(c) brief and has moved to affirm the Superior Court's judgment.

(15) When reviewing a motion to withdraw and an accompanying brief under Rule 26(c), this Court must: (i) be satisfied that defense counsel has made a conscientious examination of the record and the law for arguable claims; and (ii) conduct its own review of the record and determine whether the appeal is so totally

---

[2] The State had obtained two convictions for one act under separate legal theories.

devoid of at least arguably appealable issues that it can be decided without an adversary presentation.[3] McGriff's arguments on appeal may be summarized as follows: (i) the indictment was multiplicitous; (ii) the police conducted an illegal search and seizure of his cell phone, violated *Franks v. Delaware*,[4] and failed to preserve evidence material to his guilt or innocence; (iii) his asserted right to a speedy trial was violated; (iv) suggestive identification; (v) there was insufficient evidence to support his convictions; and (vi) ineffective assistance of counsel.

(16)  "Dividing one offense into multiple counts of an indictment violates a defendant's rights against double jeopardy."[5]  To the extent McGriff contends that the kidnapping and rape counts were multiplicitous, the Superior Court granted his motion for a judgment of acquittal on the kidnapping counts.  To the extent McGriff contends that the rape counts were multiplicitous, the Superior Court merged the rape counts for purposes of sentencing.  McGriff's multiplicity argument is therefore moot.

(17)  We next address McGriff's claims alleging violations of his constitutional rights by the police.  First, the State did not offer any evidence taken from McGriff's cell phone.  As to McGriff's invocation of *Franks*, a defendant is entitled to a *Franks* hearing when he makes a "substantial preliminary showing" that

---

[3] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *Leacock v. State*, 690 A.2d 926, 927-28 (Del. 1996).
[4] 438 U.S. 154 (1978).
[5] *Washington v. State*, 836 A.2d 485, 487-88 (Del. 2003).

6

police knowingly or "with reckless disregard for the truth" relied on a false statement to establish probable cause for a search or arrest warrant.[6] In challenging the lack of an identification of the attacker through photographic line-up, a description of the amount of money taken from the victim, and the basis for police officers' statement that a cell phone found at the crime scene belonged to him, McGriff has not made a "substantial preliminary showing" that the police knowingly or recklessly relied on a false statement to establish probable cause. He ignores that the police arrested him after they found him with Gardner, who was crying, bleeding from his mouth, and had his pants pulled down. There was video footage of McGriff's attack and arrest. Finally, McGriff does not identify the evidence that he claims the police failed to preserve or how this evidence would be material to his guilt or innocence.

(18) To determine if there is a speedy trial violation, we use the four-factor balancing test set forth in *Barker v. Wingo*.[7] The four factors are the length of the delay, the reason for the delay, the defendant's assertion of his right, and the prejudice to the defendant.[8] The factors are related and no one factor is conclusive.[9]

---

[6] 438 U.S. at 155-56.

[7] 407 U.S. 514 (1972). *See also Johnson v. State*, 305 A.2d 622, 623 (Del. 1973) (adopting *Barker* test)).

[8] *Barker*, 407 U.S. at 530.

[9] *Id.* at 533.

(19) A defendant's right to a speedy trial "attaches as soon as the defendant is accused of a crime through arrest or indictment whichever occurs first."[10] Unless the length of delay is determined to be "presumptively prejudicial," it is not necessary to consider the additional *Barker* factors.[11] This Court has held that if the delay between arrest or indictment and trial approaches one year, then the Court will generally consider the additional factors.[12]

(20) More than one year passed between McGriff's arrest in May 2020 and trial in November 2021. McGriff fails, however, to acknowledge the reason for this delay. For a significant portion of the time between McGriff's arrest (May 19, 2020) and trial (November 16, 2021 to November 18, 2021), there was a judicial emergency in effect because of the COVID-19 pandemic.[13] With the exception of a brief period between October 5, 2020 and November 16, 2020, jury trials were suspended between March 2020 and June 1, 2021.[14] The Chief Justice's judicial emergency orders tolled the time requirements under the Speedy Trial Guidelines.[15]

---

[10] *Middlebrook v. State*, 802 A.2d 268, 273 (Del. 2002).

[11] *Id.*

[12] *Cooper v. State*, 2011 WL 6039613, at *7 (Del. Dec. 5, 2011).

[13] Administrative Order No. 22 (June 29, 2021) (extending the judicial emergency until July 13, 2021); Order (Mar. 13, 2020) (declaring judicial emergency effective March 16, 2020).

[14] Administrative Order No. 19 (Apr. 30, 2021) (providing for resumption of jury trials on June 1, 2021); Administrative Order No. 13 (Nov. 16, 2020) (suspending jury trials); Administrative Order No. 10 (Sept. 4, 2020) (providing for resumption of jury trials on October 5, 2020); Administrative Order No. 3 (Mar. 22, 2020) (closing courthouses to public beginning on March 23, 2020).

[15] Administrative Order No. 22 (June 9, 2021) (tolling the time requirements under the Speedy Trial Guidelines until July 13, 2021); Order (Mar. 13, 2020) (tolling the time requirements under the Speedy Trial Guidelines).

(21) McGriff also fails to identify any prejudice that he suffered from the delay. He has not shown that the delay caused any impairment to his defense. There was no violation of McGriff's right to a speedy trial.

(22) In support of his suggestive identification claim, McGriff contends that "the showup identification procedure was so suggestive as to violate due process."[16] There was no such identification process here. The police arrested McGriff after they found him with Gardner, who was crying, bleeding from his mouth, and had his pants pulled down. There was video footage of McGriff's attack and arrest.

(23) McGriff did not move for a judgment of acquittal on the rape and assault charges in the Superior Court so we review his insufficient evidence claim for plain error.[17] There is no plain error here as there was sufficient evidence to support McGriff's convictions for attempted first-degree rape[18] and third-degree assault.[19] This evidence included Gardner's testimony regarding what happened to him on May 19, photographs of the injuries he suffered, the security camera footage,

---

[16] Exhibit B to Appellant's Brief Under Rule 26(c).

[17] Supr. Ct. R. 8; *Swan v. State*, 820 A.2d 342, 358 (Del. 2003).

[18] A defendant is guilty of attempted first-degree rape under Section 773(a)(1) when he attempts to intentionally engage in sexual intercourse with another person without the victim's consent and causes physical injury to the victim. 11 *Del. C.* § 531; 11 *Del. C.* § 773(a)(1). A defendant is guilty of attempted first-degree rape under Section 773(a)(2) when he attempts to intentionally engage in sexual intercourse with another person without the victim's consent and commits any felony or certain misdemeanors, including third-degree assault. 11 *Del. C.* § 531; 11 *Del. C.* § 773(a)(2).

[19] A defendant is guilty of third-degree assault when he intentionally or recklessly causes physical injury to another person. 11 *Del. C.* § 611(1).

and the testimony of multiple police officers about how they found McGriff with Gardner and arrested him.

(24) Finally, McGriff asserts multiple claims of ineffective assistance of counsel. We have consistently held that we will not consider ineffective assistance of counsel claims for the first time on direct appeal, and decline to do so here.[20]

(25) This Court has reviewed the record carefully and has concluded that McGriff's appeal is wholly without merit and devoid of any arguably appealable issue. We also are satisfied that Counsel has made a conscientious effort to examine the record and the law and has properly determined that McGriff could not raise a meritorious claim in this appeal.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court be AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice

---

[20] *Desmond v. State*, 654 A.2d 821, 829 (Del. 1994).

10