IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JUSTIN PARKER, | § | |
| | § | No. 126, 2018 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | |
| STATE OF DELAWARE, | § | Case No. N1703009269 |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: November 14, 2018
Decided: January 14, 2019

Before **STRINE**, Chief Justice; **VALIHURA**, **VAUGHN**, **SEITZ**, and **TRAYNOR**, Justices, constituting the Court *en Banc*.

Upon appeal from the Superior Court. **VACATED** and **REMANDED**.

Santino Ceccotti, Esquire (*Argued*), Bernard J. O'Donnell, Esquire, Office of the Public Defender, Wilmington, Delaware, for Appellant, Justin Parker.

Andrew J. Vella, Esquire, Department of Justice, Wilmington, Delaware, for Appellee, State of Delaware.

**STRINE**, Chief Justice, for the Majority:

The defendant below, Justin Parker, appeals from the Superior Court's order sentencing him for theft of a motor vehicle, felony theft, and two counts of possession of a firearm during the commission of a felony. All of the charges against Parker flow from one night where Parker and another man entered a lot that housed various vehicles, pointed a gun at the guard and locked him in a portable toilet, and then loaded a container with several vehicles, which they then stole. On appeal, Parker claims that his sentences for both theft of a motor vehicle and felony theft violate double jeopardy because the vehicles at issue in each count were stolen on the same occasion and were part of one course of action by Parker.

This appeal presents two questions. First, as a general matter, are theft of a motor vehicle and felony theft the "same offense" for double jeopardy purposes? Second, even if they are, can the two charges nevertheless be separated in this particular case because they are associated with different stolen items, even though the items were stolen at the same time and place?

We hold that theft of a motor vehicle is indeed the same offense as felony theft for double jeopardy purposes and that the two charges cannot be separated in this case. We therefore vacate Parker's sentence and remand for resentencing.

**I.**

In the early morning of March 9, 2017, two men entered shipping company Port-to-Port's lot in New Castle, Delaware, which houses various vehicles. Around

12:30 AM, the two men pointed a shotgun at a security guard on duty, duct-taped his hands together, and forced him into a nearby portable toilet. From inside the portable toilet, the guard observed the men loading several all-terrain vehicles (ATVs) and motorcycles into a shipping container. The guard estimated that he was in the portable toilet for about thirty minutes to an hour. According to the Port-to-Port facility's general manager, the stolen items "were mainly from a single spot" near the security guard; asked further whether "all the motorcycles and ATVs that were taken were located behind the guard shack," he stated that to the best of his recollection, they were.[1] Around 2:00 AM, after the two men departed, the guard escaped and reported the incident to the New Castle County Police.

On her way to the scene, the officer dispatched to Port-to-Port saw a U-Haul truck pull out from a road adjoining the Port-to-Port facility and onto the highway. The police later learned that the U-Haul truck was involved in the incident and located it in a nearby neighborhood. Inside the truck, they discovered a ski mask, a rope, a latex glove, several pieces of duct tape, and five vehicles that were removed from the Port-to-Port lot (three ATVs, a dirt bike, and a Kawasaki motorcycle). The

---

[1] App. to Answering Br. at B70 (Trial Testimony, Jimmy Avendano) ("Q. Okay. So my question for you is there were certain motorcycles and ATVs that were taken from your property that were recovered; correct? A. Mm-hmm. Q. All the property was recovered; correct? A. Yeah. Were they from a single spot or several spots? A. If I recall correctly they were mainly from a single spot."); *id.* at B71 ("Q. . . . [Y]our best recollection is all the motorcycles and ATVs that were taken were located behind the guard shack; correct? A. Yes. To the best of my recollection, yes. Yes, the best of my knowledge, yes.").

police also found Parker's fingerprints on the duct tape. In addition, a pickup truck, another ATV, a tow truck, and a tow trailer were found moved from their original locations on the Port-to-Port property. The next morning, the police found Parker at the U-Haul rental location in Wilmington. Parker told the police that he had rented the U-Haul truck the day before the thefts, but it had been stolen that night.

Parker was later arrested and ultimately indicted, convicted, and sentenced for, among other things, theft of a motor vehicle (for the stolen Kawasaki motorcycle), felony theft (for the stolen ATVs and dirt bike), and two counts of possession of a firearm during the commission of a felony (one for the theft of a motor vehicle charge and one for the felony theft charge). The indictment specifically identified the motor vehicle theft count as tied to "a motor vehicle, Kawasaki motorcycle" and the felony theft count as tied to "a Suzuki ATV, a Honda ATV and/or a Honda dirt bike, or other miscellaneous property valued at $1,500 or more."[2] So did the jury instructions.[3] In addition, Parker was also indicted and convicted for attempted theft (for the discarded pickup truck, ATV, tow truck, and tow trailer), but the trial court merged that count with the felony theft offense for sentencing after the State conceded that Parker's actions associated with the two

---

[2] App. to Opening Br. at A10–11 (Indictment).
[3] *See* App. to Answering Br. at B186–87 (describing the property stolen in the motor vehicle theft charge as "a motor vehicle, which was a Kawasaki motorcycle" and the property stolen in the theft charge as "the Suzuki ATV, a Honda ATV and/or the Honda dirt bike or other miscellaneous property valued at $1500 or more"); *id.* at B188–89 (offering similar descriptions to the jury).

counts "constituted one course of conduct planned to culminate in the theft of multiple pieces of property from Port to Port" and that they therefore "should merge for sentencing."[4] Before the trial court, Parker argued that his theft of a motor vehicle sentence, felony theft sentence, and the two associated firearms-related sentences should also merge into one theft sentence and one firearm-related sentence because the thefts are the "same offense" for double jeopardy purposes.[5] The court denied his request without a written opinion, and Parker timely appealed from its sentencing order.

## II.

On appeal, Parker asks this Court to vacate his sentence and remand for resentencing based on the same double jeopardy arguments he made below. The State claims that there is no double jeopardy violation for two reasons. First, the State argues that theft of a motor vehicle is not the same offense as felony theft for double jeopardy purposes because each offense contains an element that the other lacks. Second, the State argues that even if they were the same offense, there is no violation because each charge was associated with different stolen items: the

---

[4] App. to Opening Br. at A037 (State's Response to Defendant's Renewed Motion for Judgment of Acquittal).

[5] U.S. CONST. amend. V. Parker is not clear about whether his claim is based on the U.S. or Delaware Constitution. We proceed under the assumption that he is claiming a double jeopardy violation under only the U.S. Constitution. *See generally Poteat v. State*, 840 A.2d 599, 602 n.3 (2003) ("This Court has not yet been required to determine whether the federal and state double jeopardy provisions are identical in scope in all respects, and we do not address that issue today. Therefore, this opinion is decided solely on the basis of . . . the United States Constitution.").

Kawasaki motorcycle for the motor vehicle theft charge and the three ATVs and dirt bike for the general theft charge. This Court reviews claims of alleged infringements of constitutionally protected rights *de novo*.[6]

*A.*

We first address the State's argument that theft of a motor vehicle is not the "same offense" as felony theft because each offense contains an element that the other lacks. This is an issue of first impression for this Court.

The Double Jeopardy Clause protects defendants "against multiple punishments for the same offense."[7] Whether two offenses are "the same offense" for double jeopardy purposes is a question "of statutory construction."[8] Thus, the Court must ask whether the General Assembly "intend[ed] to impose more than one punishment for a single occurrence of criminal conduct."[9]

The felony theft statute, 11 *Del. C.* § 841, provides, in relevant part:

> **§ 841 Theft; class B felony; class D felony; class F felony; class G felony; class A misdemeanor; restitution.**
>
> (a) A person is guilty of theft when the person takes, exercises control over or obtains property of another person intending to deprive that person of it or appropriate it. Theft includes the acts described in this section, as well as those described in §§ 841A-846 of this title.
>
> [. . .]

[6] *Stigars v. State*, 674 A.2d 477, 481 (Del. 1996).
[7] *Poteat*, 840 A.2d at 603.
[8] *Id.*
[9] *Id.* at 603–04.

5

(c)(1)  Except [as provided under certain circumstances], theft is a class A misdemeanor unless the value of the property received, retained or disposed of is $1,500 or more, in which case it is a class G felony.

The General Assembly enacted the theft of a motor vehicle statute, 11 *Del. C.* § 841A, in 2006.[10]  It provides:

**§ 841A Theft of a motor vehicle; class G felony.**

(a)  A person is guilty of theft of a motor vehicle when the person takes, exercises control over or obtains a motor vehicle of another person intending to deprive the other person of it or appropriate it.

(b)  As used in this section "motor vehicle" means an automobile, motorcycle, van, truck, trailer, semitrailer, truck tractor and semitrailer combination, or any other vehicle which is self-propelled, which is designed to be operated primarily on a roadway as defined in § 101 of Title 21, and in, upon or by which any person or property is or may be transported. "Motor vehicle" as used in this section shall not include any device that is included within the definitions of "moped," "off-highway (OHV)," "triped," "motorized scooter or skateboard," "motorized wheelchair" or "electric personal assistive mobility device (EPAMD)" as defined in § 101 of Title 21.

(c)  Theft of a motor vehicle is a class G felony.

Also relevant is 11 *Del. C.* § 206, which provides, in relevant part, that "the defendant may not . . . be convicted of more than 1 offense if . . . [o]ne offense is included in the other, as defined in subsection (b) of this section."[11]  Subsection (b) provides, in relevant part, that an offense is "included when . . . [i]t is established by

---

[10] 75 Del. Laws ch. 290, §1.
[11] 11 *Del. C.* § 206(a)(1).

6

the proof of the same or less than all the facts required to establish the commission of the offense charged."[12] Section 206 is consistent with the U.S. Supreme Court's test in *Blockburger v. United States*, which provides that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."[13] *Blockburger*, however, "is only an aid to statutory construction."[14] "It does not negate clearly expressed legislative intent and where . . . a better indicator of legislative intent is available, it does not apply."[15]

The State argues that Parker's claim fails under the *Blockburger* test because each theft provision contains an element that the other does not. Specifically, the motor vehicle provision requires proof that the item stolen is a "motor vehicle," which is not an element of ordinary theft; and the felony theft provision requires proof that the item's value is at least $1,500, which is not an element of the motor vehicle theft statute. In support of its argument, the State cites this Court's unpublished order in *Proffitt v. State*, which held that theft and theft of a firearm

---

[12] *Id.* § 206(b)(1).
[13] 284 U.S. 299, 304 (1932); *see also Stigars v. State*, 674 A.2d 477, 482 (Del. 1996) (noting that "this Court has generally employed the *Blockburger* test," which "is consistent with 11 *Del. C.* § 206").
[14] *Stigars*, 674 A.2d at 482.
[15] *Id.*

7

were different offenses for double jeopardy purposes.[16] The *Proffitt* Court reasoned that each of the offenses "requires an element of proof which is not present in the other" because "[t]he felony theft statute . . . requires proof of value, which the theft of a firearm statute . . . does not," and "the theft of a firearm statute requires proof that the stolen property was, in fact, a firearm . . . while the theft statute does not."[17]

Parker distinguishes *Proffitt* on the grounds that the theft statute expressly states that "[t]heft includes the acts described in this section, as well as those described in §§ 841A-846 of this title."[18] Section 841A is the motor vehicle statute. That statement, Parker argues, shows that the General Assembly intended theft of a motor vehicle to be an included offense of the more general theft provision. In support of this argument, he cites the legislative history of the theft of a motor vehicle statute, which explains that "this Act will classify all motor vehicle thefts as a felony" due to the "great inconvenience and economic hardship to the victim, regardless of the value of the stolen vehicle."[19]

We agree with Parker that theft of a motor vehicle and theft are the same offense for double jeopardy purposes. Even if theft of a motor vehicle would not be an included offense of felony theft under the *Blockburger* test, *Blockburger* "is only

---

[16] *Proffitt v. State*, 568 A.2d 1072, 1989 WL 154707, at * 1 (Del. Dec. 1, 1989) (TABLE).
[17] *Id.*
[18] 11 *Del. C.* § 841(a).
[19] Del. H.B. 374 syn., 143d Gen. Assem., 75 Del. Laws ch. 290, § 1 (2006).

an aid to statutory construction," and "where . . . a better indicator of legislative intent is available, it does not apply."[20] Here, there is a better indicator of legislative intent: the statement in the felony theft statute that "[t]heft includes the acts described in this section, as well as those described in §§ 841A-846 of this title." Section 841A is the theft of a motor vehicle provision; thus, by the plain language of the theft statute, theft of a motor vehicle is an included offense of theft. The State's preferred understanding, by contrast, would render the final sentence of § 841(a) superfluous, contrary to the canon that "[a] statute will not be construed in such a way that part of it becomes surplusage."[21] If "includes" means something other than "includes for double jeopardy purposes," the State has not explained what that alternative meaning might be.

This understanding of motor vehicle theft as an included offense of theft makes sense in context. When the General Assembly enacted the theft of a motor vehicle statute, it placed the provision immediately after the general theft provision in the Delaware Code. Judging by its legislative history, the General Assembly enacted the new statute to make a sort of "automatic felony" out of stealing a car—without regard to the car's value—because "[t]he theft of a motor vehicle often causes great inconvenience and economic hardship to the victim, regardless of the

---

[20] *Stigars*, 674 A.2d at 482.

[21] *Arbern-Wilmington, Inc. v. Director of Revenue*, 596 A.2d 1385, 1390 (Del. 1991).

value of the stolen vehicle."[22] That does not mean that theft of a motor vehicle is a separate offense, such that a thief could be sentenced twice for stealing the same car—once under the motor vehicle statute and once under the general theft statute—thereby doubling the punishment. Instead, the legislative history suggests that the General Assembly simply meant to make the punishment for stealing a car the same as the punishment for stealing any other item worth $1,500 or more, regardless of whether the car is actually worth that much in dollar resale value. Indeed, the legislative history explicitly states that value rationale for making theft of a motor vehicle a felony.[23]

Construing theft of a motor vehicle as an included offense also makes sense in light of the other provisions included from §§ 841A to 846, each of which is a different species of theft.[24] The official Commentary to the Delaware Criminal Code

---

[22] Del. H.B. 374 syn., 143d Gen. Assem., 75 Del. Laws ch. 290, § 1 (2006). The full synopsis to H.B. 374, which created the motor vehicle theft offense, states:

> At present the Delaware statute that criminalizes theft requires, in most circumstances, that the property be valued at greater than $1,000.00 for the crime to be considered a felony. The theft of a motor vehicle often causes great inconvenience and economic hardship to the victim, regardless of the value of the stolen vehicle. In recognition of that fact, this Act will classify all motor vehicle thefts as a felony.

*Id.*
[23] *See id.*
[24] *See* 11 *Del. C.* § 841B (organized retail crime); *id.* § 841C (theft of a prescription form or pad); *id.* § 842 (theft of lost or mislaid property); *id.* § 843 (theft by false pretenses); *id.* § 844 (theft by false promises); *id.* § 845 (theft of services); *id.* § 846 (extortion). Originally, § 841 had provided that "[t]heft includes the acts described in sections 842 through 846." *Id.* § 841 (1972). The General Assembly amended that sentence to read as it currently does in 2007 through a bill that

issued in 1973, which this Court has previously cited as authoritative,[25] reinforces this understanding by referring to the subsequent specialized theft offenses as "all constitut[ing] theft,"[26] being "different types of the same criminal activity," and being "include[d]" in the general theft provision.[27] The Commentary's introduction to the "theft" subpart of the Code bolsters this view even further, explaining that "[t]he ensuing sections, in their original form, were drafted with the concept of a unified theft offense in mind."[28] Under the new statutory framework, "all takings of property, whatever they might have been called at common law, are to be treated as part of a single offense, called theft."[29]

Proffitt is distinguishable based on the differences between the motor vehicle and firearm theft statutes. Unlike the motor vehicle theft statute, the firearm theft statute at issue in Proffitt is not mentioned as "included" by the general theft

---

also created a new offense for "organized retail crime," codified at § 841B. 76 Del. Laws ch. 98, § 3 (2007).

[25] See Poteat v. State, 840 A.2d 599, 605 (Del. 2003) (relying on the Commentary to hold that menacing is an included offense of robbery); Stigars, 674 A.2d at 482–83 (relying on the Commentary to hold that theft is an included offense of robbery).

[26] DELAWARE CRIMINAL CODE WITH COMMENTARY 270 (1973) ("Section 841 covers the crimes formerly known as larceny, larceny by bailee, larceny by trick, and embezzlement. It also covers any other activity that may appropriately be described in the terms there used. The ensuing sections cover other more specialized common-law crimes. But all constitute theft.").

[27] Id. at 271 ("All of these crimes are equally serious, and are closely related enough to be treated as different types of the same criminal activity. Accordingly, theft is defined to include all acts described in §§ 842–46, and it is appropriate to indict the defendant under § 841.").

[28] Id. at 261.

[29] Id.

11

statute.[30]  Indeed, the theft of a firearm provision is located in an entirely different subchapter in the Delaware Criminal Code, titled "Offenses Against Public Health, Order and Decency."[31]  That title hints toward why the General Assembly may have decided to make theft of a firearm, but not theft of a motor vehicle, a separate offense from theft:  stealing a gun creates a risk of public harm separate from the harm to the owner of the gun, whereas stealing a car mainly just hurts the person whose car was stolen.  Thus, two potential punishments for theft of a firearm:  one under the general theft statute for the harm to the gun owner, and one under the specialized firearm statute for the risk to the public that arises from the possibility that the gun will be used to shoot someone.  But only one for theft of a motor vehicle.

In light of the relevant statutory text and legislative history, we hold that theft of a motor vehicle is the same offense as theft for double jeopardy purposes.

*B.*

The State also argues that even if theft of a motor vehicle is an included offense of theft, there is no double jeopardy violation because the two charges were for separate items:  a Kawasaki motorcycle for the motor vehicle theft charge and three ATVs and a dirt bike for the general theft charge.  This argument implicates the "multiplicity doctrine," which involves "the charging of a single offense in more

---

[30] *Compare* 11 *Del. C.* § 841(a) ("Theft includes the acts described in this section, as well as those described in §§ 841A-846 of this title."), *with id.* § 1451 (codifying "theft of a firearm").
[31] 11 *Del. C.* §§ 1301 *et seq.*

12

than one count of an indictment."[32]  The multiplicity doctrine, which is rooted in the

Double Jeopardy Clause, prohibits the State from dividing one crime into multiple

counts by splitting it "into a series of temporal or spatial units."[33]  Here, the

indictment contained separate counts for the different items stolen—one count for

the "Kawasaki motorcycle" and a second count for "a Suzuki ATV, a Honda ATV

and/or a Honda dirt bike, or other miscellaneous property valued at $1,500 or

more."[34]  These distinctions between the two counts were then reflected in the

court's jury instructions.  Parker is therefore guilty of multiple thefts only if the theft

of the Kawasaki motorcycle is separate from the thefts of the other items under the

multiplicity doctrine.

 This Court has previously employed a three-factor balancing test to determine

whether multiple violations of the same offense have occurred, weighing whether

the acts are sufficiently differentiated by (1) time, (2) location, or (3) intended

purpose.[35]  At bottom, "[t]he critical inquiry is whether the temporal and spatial

---

[32] *Williams v. State*, 796 A.2d 1281, 1285 (Del. 2002) (quoting *Feddiman v. State*, 558 A.2d 278, 288 (Del. 1989)) (internal quotation marks omitted).

[33] *Spencer v. State*, 868 A.2d 821, 823–24 (Del. 2005); *accord Williams*, 796 A.2d at 1285 ("Dividing one offense into 'multiple counts of an indictment violates the double jeopardy provisions of the constitutions of the State of Delaware and of the United States.'" (quoting *Feddiman*, 558 A.2d at 288)).

[34] App. to Opening Br. at A10–11 (Indictment).

[35] *See Williams*, 796 A.2d at 1286–87 (adopting a test for possession with intent to deliver cocaine based on whether "'the possessions are sufficiently differentiated by *time, location or intended purpose*'" and stating that "[t]his test consists of factors a court may use in determining, under the circumstances, whether two violations of same statute have occurred" (quoting *Rashad v. Burt*, 108 F.3d 677, 681 (6th Cir. 1997)); *Feddiman*, 558 A.2d at 288–89 (weighing the timing and location of separate acts of sexual assault to determine whether multiple counts of sexual assault

separation between the acts supports a factual finding that the defendant formed a separate intent to commit each criminal act."[36]  In the theft context, we held in *Reader v. State* "that where property belonging to different owners is taken at the same time and place as a single or continuous act or transaction, that taking constitutes a single criminal offense," characterizing that rule as "espoused by the overwhelming majority of jurisdictions."[37]  We described this as the "single theft rule,"[38] which the leading treatise on criminal law has stated as follows:

> When several articles of property are stolen by the defendant . . . at the same time and at the same place, only one larceny is committed.
>
> When several articles are stolen by the defendant . . . on different occasions over a period of time, each taking constitutes a separate larceny if each is the result of a separate and independent impulse of intent.  On the other hand, if the successive takings are actuated by a single and continuing impulse or intent, or are carried out pursuant to a larcenous scheme or plan and constitute a continuous transaction, only a single larceny is committed.
>
> If several articles are stolen from the same place as the result of a single and continuing impulse or intent, the mere fact that the thief finds it convenient or necessary to make several trips to carry the articles away

---

were permissible under the multiplicity doctrine); *Spencer*, 868 A.2d at 824 (weighing the "temporal and spatial separation between" two gun shots, as well as whether the defendant "had formed a separate intent to harm" the victim "between the two gun shots," to determine whether the State could charge the defendant for two counts of assault).

[36] *Spencer*, 686 A.2d at 823.

[37] 349 A.2d 745, 747 (Del. 1975).

[38] *Id.*; *see also Guyer v. State*, 453 A.2d 462, 463 n.3 (describing "the single theft rule adopted by this Court in *Reader*" as "when property belonging to different owners is taken at the same time and place, only one theft count, not multiple counts, will lay for the taking").

14

does not transform the offense from a single larceny into multiple ones.[39]

In emphasizing the time, location, and intent factors, that description is consistent with Delaware's general approach to the multiplicity doctrine. Although *Reader* adopted the single theft rule in the multiple-owner context, the rule applies with equal force when the items are stolen from the same owner.[40]

The facts of *Reader* are instructive for this case. In *Reader*, the defendant broke into "a combination warehouse, garage, and office" that housed various equipment.[41] After entering the garage, the defendant went to the adjoining office and brought back several items and placed them in a pickup truck found in the garage.[42] The defendant then backed the truck out of the garage and instructed an undercover police officer he thought was his accomplice to drive out a van located in an adjoining garage bay.[43] At this point, about five to ten minutes after the defendant had originally entered the building, the police arrived and arrested him.[44]

---

[39] 3 CHARLES E. TORCIA, WHARTON'S CRIMINAL LAW § 346, Westlaw (last updated Aug. 2018); *see also id.* § 347 (stating the multiple-owner version of this rule).

[40] *Compare id.* § 346 (stating the same-owner version of this rule), *with id.* § 347 (stating the multiple-owner version of this rule and noting that some courts do not follow the multiple-owner version).

[41] *Reader*, 349 A.2d at 746.

[42] *Id.*

[43] *Id.*

[44] *Id.*

We held that these acts constituted "but one theft offense" and struck the defendant's convictions and sentences for two out of the three felony theft charges.[45]

Like *Reader*, the facts here indicate that Parker's theft of the Kawasaki motorcycle on the one hand and ATVs and dirt bike on the other constituted "but one theft offense."[46] The evidence presented at trial suggests that these thefts occurred within the span of an hour and a half at most, all from the same lot operated by Port-to-Port, and were part of a single criminal scheme to steal various vehicles from the lot. Indeed, the security guard's testimony suggests that Parker stole the Kawasaki motorcycle around the same time as the other items and from the same place in the lot—from the portable toilet, the guard saw the two men put the ATVs and "motorcycles" (by which he presumably meant both the Kawasaki motorcycle and the dirt bike) into the same shipping container, all within the span of thirty minutes to an hour[47]—and the police ultimately found the items in the same U-Haul truck. Further, the Port-to-Port general manager testified that the items had been taken "mainly from a single spot" near the guard; and asked whether "all the motorcycles and ATVs that were taken were located behind the guard shack," the

---

[45] *Id.* at 748.
[46] *Id.*
[47] App. to Answering Br. at B75 (Trial Testimony, Javier Conaway) ("Q. You say you saw these two guys, these two people loading up ATV's and motorcycles into the container? A. Yes. Q. How long did you stay in the Port-A-Potty? A. I'd say 30 minutes, 40, even an hour."). It is unclear how the items made their way from the shipping container to the U-Haul truck.

manager responded that to the best of his recollection, they were.[48]  There is no evidence to suggest that Parker's theft of the motorcycle was part of a different criminal plan from his theft of the other items or that the thefts occurred at different times or locations.  In short, it was all one heist.

This result is consistent with other Delaware cases on multiplicity.  In *Williams v. State*, for example, we held that it was multiplicitous to charge the defendant, a drug dealer, on multiple counts of possession with the intent to distribute where the police found part of the defendant's stash of cocaine in his apartment and part of it in his car.[49]  There, we noted that the drugs "were found at the same time" and "were in the same general location because the car was in close proximity to the apartment," and the defendant's "possession of cocaine shows that he 'displayed a single intent and goal—distribution.'"[50]  In this case, Parker similarly stole the items at the same time from the same location, and the evidence indicates that the thefts were part of a singular criminal scheme.  In cases where we have found no multiplicity violation, by contrast, the facts have indicated either that there was a meaningful temporal or spatial separation between each act;[51] that a separate intent

---

[48] App. to Answering Br. at B70–71 (Trial Testimony, Jimmy Avendano).
[49] *See* 796 A.2d 1281, 1283–84, 1286–88 (Del. 2002).
[50] *Id.* at 1286–87 (quoting *Rashad v. Burt*, 108 F.3d 677, 682 (6th Cir. 1997)).
[51] *See Feddiman v. State*, 588 A.2d 278, 287–89 & n.28 (Del. 1989) ("The State's allegations in the record of the variations in the sexual acts, the physical movement of the victim between the acts, and the timing between the sexual acts, was sufficient to support Feddiman's prosecution for eight separate offenses of Unlawful Sexual Intercourse in the First Degree."); *Cintron v. State*, 757 A.2d 1277, 2000 WL 201203, at *1–2 (Del. Feb. 4, 2000) (TABLE) (holding it was not plain error

was behind each act;[52] or, in sexual assault and other violent crime cases, that each act reflected a distinct harm or a risk of harm to the victim.[53]

The State's logic, by contrast, would nullify the multiplicity doctrine as applied to theft. In effect, the State's approach would allow Parker to be charged with a separate count for each item he stole: one count for the Kawasaki motorcycle, a second count for the first ATV, a third count for the second ATV, a fourth count for the dirt bike, and so on for any other stolen items.

---

to conclude that separate charges related to the sexual assault of a minor were not multiplicitous where they occurred at different locations over the course of a year).

[52] *See Feddiman*, 588 A.2d at 287–89 & n.28 (concluding that the defendant had formed a separate intent to rape the victim based on "variations in the sexual acts," "[a]dditional orders" being "given to the" victim, and each act being "a further denigration of the victim's integrity and a further danger to the victim" (internal quotation marks omitted)); *Spencer v. State*, 868 A.2d 821, 824 (Del. 2005) ("Scott turned his back to Spencer after the first shot . . . . The evidence of record is sufficient for a rational trier of fact to conclude that the intent Spencer had formed to shoot Scott in the leg was distinct from the intent he formed thereafter to shoot Scott in the buttocks after Scott turned his back to run away from his assailant."); *Washington v. State*, 836 A.2d 485, 488–91 (Del. 2003) (finding separate intents where the defendant had robbed the victim, told the victim to leave the premises, and then, after the victim had started to run to his car, said: "No. F* * * that. Give me your keys.").

[53] *See Feddiman*, 588 A.2d at 289 ("One is not allowed to take advantage of the fact that he has already committed one sexual assault on the victim and thereby be permitted to commit further assaults on the same person with no risk of further punishment for each assault committed. Each act is a further denigration of the victim's integrity and a further danger to the victim." (internal quotation marks omitted)); *Morrisey v. State*, 620 A.2d 207, 212–13 (Del. 1993) (finding no multiplicity violation for "separate acts of sexual intercourse" that the defendant "forced his victims to perform"); *Whitfield v. State*, 867 A.2d 168, 171–72 (Del. 2004) (finding separate offenses where the defendant had fired a shot during an attempted robbery and then, after the attempt was over, fired another shot); *Washington*, 836 A.2d at 488–91 (noting the differences between violent crimes "against the person of the victim" and "property-oriented crimes" and noting that "the robbery statute seeks to address the personal well-being of the victim, rather than simply the protection of property").

Instead, the General Assembly rejected that item-by-item approach to theft in favor of an aggregation approach. With limited exceptions, when the theft is minor, it is classified as a misdemeanor, no matter how many items the defendant steals, so long as their aggregate value is less than $1,500.[54] If the value of the stolen items reaches $1,500, however, the theft becomes a Class G felony.[55] Meanwhile, $50,000 in value makes the theft a Class D felony, and $100,000 makes it a Class B felony.[56] Under this approach, the punishment is determined not by the number of items stolen, but by the total value of those items.

In conceding below that Parker's theft and attempted theft charges should merge for sentencing, the State appears to recognize the inequity that would result from sentencing Parker separately for each stolen item. Explaining its position that those two charges should merge, the State admitted that Parker's "actions associated with the Attempted Theft and Theft charges constituted one course of conduct planned to culminate in the theft of multiple pieces of property from Port to Port."[57] Thus, the State conceded, finding Parker "more criminally culpable for leaving

---

[54] *See* 11 *Del. C.* § 841(c)(1) ("Except where a victim is 62 years of age or older, or an 'adult who is impaired' as defined in § 3902(2) of Title 31, or a 'person with a disability' as defined in § 3901(a)(2) of Title 12, theft is a class A misdemeanor unless the value of the property received, retained or disposed of is $1,500 or more, in which case it is a class G felony.").

[55] *Id.*

[56] *Id.* § 841(c)(3).

[57] App. to Opening Br. at A037 (State's Response to Defendant's Renewed Motion for Judgment of Acquittal).

property behind rather than stealing the entirety of the property is inequitable."[58]

Because the State does not contend that stealing the Kawasaki motorcycle was part of a different course of conduct from the other thefts,[59] the State's stance on appeal is not reconcilable with its prior willingness to merge the attempted theft charge with the felony theft charge.

Also notable is the State's admission during oral arguments that if the value of the vehicle that Parker stole was substantially more than the Kawasaki motorcycle (*e.g.*, a Ferrari), the State's theory would allow it to aggregate all the items to charge Parker for a higher grade of felony with a single count of theft. According to the State's theory, if Parker stole a vehicle worth $40,000 and the rest of the property he stole was worth $12,000 (adding up to a total of $52,000), the State could charge Parker with either two Class G felonies (up to four years in prison) or one Class D felony (up to eight years in prison). In other words, the State believes it has the option to subject a defendant to whichever punishment it chooses, proceeding with a single count of felony theft that includes the value of the vehicle when that would be more punitive, or with a felony charge for theft and a felony charge for theft of a motor vehicle when that would be more punitive. Yet the State also candidly

---

[58] *Id.*

[59] *See* Answering Br. at 7 ("[I]n Parker's case, the vehicles stolen were different as to each charge."); *id.* at 10 ("[T]he two offenses in this case were not based on theft of the same property. Parker was charged with Theft of a Motor Vehicle based on the factual allegation that he stole a Kawasaki motorcycle . . . . He was also charged with Felony Theft, based on the factual allegation that he stole three OHVs . . . .").

20

conceded that it would be impermissible to charge a defendant for both felony theft of a motor vehicle and felony theft of the same stolen car "because then it's a multiplicity issue."[60] But if charging a defendant twice for theft under those circumstances is a multiplicity violation, then so is charging Parker twice under the circumstances of this case. The fact that, "in Parker's case, the vehicles stolen were different as to each charge,"[61] makes no difference because Delaware follows the single theft rule.

In sum, because the evidence indicates that Parker committed the thefts at the same time, at the same location, and with the same criminal intent, we hold that sentencing Parker twice for those thefts was multiplicitous.

## III.

Because theft of a motor vehicle and felony theft are the "same offense" for double jeopardy purposes and Parker committed the two thefts for which he was charged at the same time, at the same location, and with the same criminal intent, the Double Jeopardy Clause prohibits imposing separate punishments for each charge under the circumstances of this case. As a result, the Superior Court erred in sentencing Parker for both thefts and both associated firearm-related charges. We therefore vacate his sentence and remand for resentencing.

---

[60] Oral Argument at 32:50–33:30.
[61] Answering Br. at 7.

**VAUGHN**, Justice, dissenting:

The appellant argues he should not have been sentenced for both theft of a motor vehicle and felony general theft because the two offenses are based on the same course of conduct.[1] He contends that the Superior Court erred by finding that convictions for both were permitted under the test of *Blockburger v. United States*.[2] In so ruling, the Superior Court found that there were differing elements between the two offenses. It found that felony general theft of property did not require proof of theft of a motor vehicle and that theft of a motor vehicle did not require proof of the motor vehicle's value.

Parker's theory is that the Superior Court's reliance upon the *Blockburger* test is misplaced for two reasons. The first is that the two theft offenses involved here fail the *Blockburger* test. His argument on this point is that "[w]hile the felony theft offense does not require proof of the theft of a motor vehicle as an element of the offense, the theft of a motor vehicle offense, on the other hand, does not require proof of a felony amount of loss as an element of the offense because it is a felony *per se,* as defined."[3]

---

[1] Parker also argues, for the same reason, that he should not have been sentenced on both associated firearms offenses. Disposition of his argument on the two theft offenses also disposes of his argument on the associated firearm offenses. He has not presented any separate or additional argument on the firearms offenses.

[2] 284 U.S. 299 (1932).

[3] Appellant's Opening Br. at 10.

His second argument is that the *Blockburger* test is an aide to statutory construction but does not supersede otherwise evident statutory intent. On this point he argues, "It was clear under the evidence in this case that the felony theft of a motor vehicle offense was not a separate offense from the felony theft offense because, like the attempted felony theft offense and felony theft offense, it was an included offense of the felony theft offense."[4] He continues, "The General Assembly has made that clear in defining the offense of felony theft: 'Theft includes the acts described in this section, as well as those described in §§ 841A-846.' Section 841A of the Criminal Code defines theft of a motor vehicle, a felony offense by definition."[5] He concludes, therefore, that "the offense of theft of a motor vehicle, a felony offense by definition, is an included offense of felony theft as unambiguously stated under the theft statute."[6]

"The key question presented by a claim of double jeopardy that is based on multiple punishments is: did the General Assembly intend to impose more than one punishment for a single occurrence of criminal conduct."[7] "In seeking to ascertain legislative intent, we must first look at the text of the statute in its context."[8]

---

[4] *Id.* at 10-11.
[5] *Id.* at 11.
[6] *Id.*
[7] *Williamson v. State*, 707 A.2d 350, 362 (Del. 1998) (*en banc*) (quoting *Stigars v. State*, 674 A.2d 477, 481 (Del. 1996)).
[8] *Stigars*, 675 A.2d at 481.

2

The language that "[t]heft includes the acts described in this section, as well as those described in §§ 841A-846" first appeared in § 841 of the 1973 Delaware Criminal Code in the following form: "Theft includes the acts described in this section, as well as those described in §§ 842-846." The commentary to the 1973 Criminal Code is helpful in understanding what is meant by this sentence. The commentary states:

> Finally, a word must be said about denominating all serious misappropriation of property theft. In doing so this Code follows the modern penal law revisions in other states, and it avoids the possibility that guilty people will escape punishment on the old technical grounds. All of these crimes are equally serious, and are closely related enough to be treated as different types of the same criminal activity. Accordingly, theft is defined to include all acts described in §§ 842-846, and it is appropriate to indict the defendant under § 841.[9]

I would find that the language in § 841 simply makes clear that the crimes defined in §§ 842 through 846 are specialized forms of theft which, at the option of the State, may be indicted and prosecuted under § 841 in lieu of being prosecuted under §§ 842 through 846.

Another relevant statement is found in the introductory comment to the theft subpart: "The ensuing sections, in their original form, were drafted with the concept of a unified theft offense in mind. The idea is that all takings of property, whatever

---

[9] DELAWARE CRIMINAL CODE WITH COMMENTARY 271 (1973) (footnote omitted).

3

they might have been called at common law, are to be treated as part of a single offense, called theft."[10] This comment occurs in the context of a discussion of common-law larceny and the "piecemeal enactment of provisions against improper appropriation of someone else's property."[11] The development of common-law larceny, the commentators reasoned, led to "the law's uncertainty" and "the good chance that conviction may be avoided by a technicality or by a jury's confusion."[12] The drafters' intent, it appears, was that all takings of property, whatever their form, be regarded as theft, so as to avoid the uncertainty that had developed under common-law larceny. Conceptualizing all takings of property as theft, however, does not take us very far in understanding when a taking that violates two statutory theft sections may, or may not, be prosecuted under each statute. That issue is not discussed in the commentary to the theft sections of the 1973 Criminal Code.

A more helpful source is 11 *Del. C.* § 206, which codifies the double jeopardy rules generally applicable in the criminal code. It first sets forth a general rule that "[w]hen the same conduct of a defendant may establish the commission of more than 1 offense, the defendant may be prosecuted for each offense."[13] It then provides exceptions, the one relevant here being that "[t]he defendant may not, however, be

---

[10] *Id.* at 261.
[11] *Id.* at 260.
[12] *Id.*
[13] 11 *Del. C.* § 206(a).

4

convicted of more than 1 offense if: (1) One offense is included in the other, as defined in subsection (b) of this section."[14] Subsection (b)(1) defines what is meant by an "included" offense. An included offense is one that is "established by the proof of the same or less than all the facts required to establish the commission of the offense charged."[15] Under § 206, a defendant cannot be double-convicted under both §§ 841 and 841A for stealing a single motor vehicle, because both offenses would be established by proof of the same fact: the single theft of a certain motor vehicle.

In this case, Parker was charged in Count V of the indictment with theft of a motor vehicle under § 841A. He was charged in Count VII with felony general theft under § 841. Section 206 permits Parker's convictions for both offenses because they are not established by the same facts and neither is established by less than all the facts required to establish the other. They are based on different facts: Count V is established by proof that Parker stole the Kawasaki motorcycle, which is a motor vehicle as defined in § 841A, while Count VII is established by proof that Parker stole two ATV's and a dirt bike having an aggregate value of $1,500 or more. The charge under Count V did not require proof of the theft of two ATV's and a dirt bike having an aggregate value of $1,500 or more, and the charge under Count VII did

---

[14] *Id.*
[15] *Id.* § 206(b)(1).

not require proof of the theft of a motor vehicle. Since neither count is established by proof of the same or less than all the facts required for proof of the other, Parker's convictions on both counts satisfy the requirements of § 206. Section 206 is not a mere aid to statutory construction, and there is no language in §§ 841 through 846 or the commentary stating that § 206 does not apply to those sections.

Reading § 841 to preclude charging Parker with both theft of a motor vehicle under § 841A and felony theft under § 841 because of the language that "[t]heft includes the acts described in this section, as well as those described in §§ 841A-846"[16] renders § 841 in conflict with § 206. When possible, statutes should be read as a whole to reach a harmonious result and to give force and effect to all provisions.[17] If the language of § 841(a) is interpreted as simply indicating that theft of a motor vehicle (among other things) may, at the State's discretion, be prosecuted under § 841, both § 206 and § 841(a) will be given force and effect without resulting in a conflict between the provisions. If the language in § 841(a), however, is interpreted as establishing theft of a motor vehicle as an included offense for purposes of double jeopardy, in the factual circumstances of this case, § 206 will have no force and effect because the defendant no longer "may be prosecuted for each offense" even though the same conduct "establish[ed] the commission of more

---

[16] *Id.* § 841(a).

[17] *See, e.g.*, *Doroshow, Pasquale, Krawitz & Bhaya v. Nanticoke Mem'l Hosp., Inc.*, 36 A.3d 336, 343 (Del. 2012) (*en banc*).

6

than 1 offense"[18] and the motor-vehicle theft offense was not "established by the proof of the same or less than all the facts required to establish the commission of the" felony general theft offense.[19]

Theft of a motor vehicle was added as a separate theft in § 841A in 2006, and the above-quoted sentence in § 841(a) was reworded accordingly. The synopsis of the act adopting § 841A states, in part: "The theft of a motor vehicle often causes great inconvenience and economic hardship to the victim, regardless of the value of the stolen vehicle. In recognition of this fact, this Act will classify all motor vehicle thefts as a felony."[20] The adoption of § 841A is a clear legislative statement that theft of a motor vehicle can always be prosecuted as a felony. If a defendant steals a motor vehicle and other property at the same time, and the aggregate value of the motor vehicle and the other property is less than $1,500, it seems to me quite clear that the State has the option of prosecuting the theft of the motor vehicle as a felony under § 841A and the theft of the other property as a misdemeanor under § 841. If the value of other property happens to be $1,500 or more, it seems to me equally clear that the State may prosecute both as Class G felonies. If a person steals a motor vehicle and other property from a person 62 years of age or older, the State has the option of charging the person with a Class G felony for theft of the motor vehicle

---

[18] *Id.* § 206(a).
[19] *Id.* § 206(b)(1).
[20] 75 Del. Laws Ch. 290, § 1, Synopsis (2006).

under § 841A and, if the value of the other property is $1,500 or more, a Class F felony under § 841 for theft of the other property. If the value of the other property stolen is $50,000 or more, the State has the option of charging the person with a Class G felony for theft of the motor vehicle under § 841A and a Class D felony for theft of the other property under § 841. If the aggregate value of the motor vehicle and the other property is $50,000 or more, the State has the option of charging the person with a Class D felony for the theft of all items under § 841. These are all perfectly legitimate charging options which the General Assembly has given the State through its statutory enactments.

Finally, Parker's convictions on both counts of theft do not violate the rule against multiplicity or the single theft rule. The doctrine of multiplicity prohibits the State from bringing multiple charges under the same statute.[21] The State cannot divide an offense under one statute into a series of units.[22] Here, the two theft counts are different forms of theft under different statutes. Since the charges are made under different statutes, there is no multiplicity. The single theft rule is not violated because our criminal code allows the theft in this case to be divided between § 841 and § 841A. If the State had attempted to split the theft of the ATV's and the dirt

---

[21] *Washington v. State*, 836 A.2d 485, 487 (Del. 2003) (*en banc*).
[22] *Id.* at 487-88.

bike into multiple counts of theft under § 841, the multiplicity and single theft rules would be violated.  But the State did not do so.

I would affirm the judgment of the Superior Court.