# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,     )
                                    )

     v.                 )     ID. No. 1605012921A
                                      )

DIAMONTE TAYLOR,     )
                                    )

     Defendant.     )

## MEMORANDUM OPINION

Date Submitted: March 4, 2022
Date Decided: June 30, 2022

*Upon Defendant's Motion to Dismiss*
**DENIED**.

Benjamin S. Gifford IV, Esq. of The Law Office of Benjamin S. Gifford IV and John A. Barber, Esq. of The Law Office of John A. Barber, Wilmington, DE. *Attorneys for Defendant*.

Matthew Frawley and Mark Denney, Deputy Attorneys General, Wilmington, DE. *Attorneys for State of Delaware.*

**MEDINILLA, J.**

**INTRODUCTION**

After a ten-day jury trial in March of 2018,[1] a jury returned guilty verdicts against Defendant Diamonte Taylor ("Defendant") for Murder in the First Degree, Gang Participation, two counts of Reckless Endangerment, Possession of a Firearm during the Commission of a Felony, two counts of Aggravated Menacing, and Assault in the First Degree.[2]

On direct appeal,[3] the Supreme Court reversed Defendant's conviction and remanded the case for a new trial.[4] Defendant now moves to dismiss his indictment claiming a new trial violates the Double Jeopardy Clause of the Delaware Constitution[5] due to alleged prosecutorial misconduct in a pretrial hearing.[6] Having considered Defendant's Motion to Dismiss, the State's Response in Opposition, oral arguments, and the record in this case, Defendant's Motion is **DENIED.**

**FACTUAL AND PROCEDURAL HISTORY[7]**

This case stems from various charges related to a gang feud in the City of Wilmington between a Wilmington street gang called Shoot to Kill ("STK") and a rival gang Only My Brothers ("OMB"). What began following the murder of an

---

[1] *See* Jury Trial Held Before Judge Medinilla, D.I. 77.
[2] *See* Verdict Sheet, D.I. 78.
[3] *See* Letter from Supreme Court RE: A Notice of Appeal was Filed, D.I. 106.
[4] *See generally Taylor v. State*, 260 A.3d 602 (Del. 2021).
[5] *See* Del. Const. Art. I, § 8.
[6] Defendant's Motion to Dismiss, D.I. 136, at 1 [hereinafter Motion to Dismiss].
[7] The recitation of facts is from the Supreme Court of Delaware decision in *Taylor v. State*, 260 A.3d 602 (Del. 2021).

2

STK affiliate in January of 2015 culminated in the murder of fourteen-year-old Brandon Wingo, shot in the face when walking home from school on May 19, 2016. Defendant was indicted for charges of Murder in the First Degree, as well as charges of Gang Participation, Conspiracy in the First Degree, and multiple other gang-related violent felonies to include Reckless Endangerment, Possession of a Firearm during the Commission of a Felony, two counts of Aggravated Menacing, and Assault in the First Degree.[8]

On January 22, 2018, Defendant filed a Motion to Suppress regarding evidence seized from his cell phone pursuant to a search warrant.[9] He raised two separate arguments as to why evidence downloaded from his cell phone should have been excluded. First, that the search warrant failed to establish a specific nexus between any crime and the device to be searched,[10] and second that the search warrant was inadequately particular and thus constituted an impermissible general warrant.[11]

This Court held a suppression hearing on February 16, 2018. Defendant argued that the use of female pronouns throughout the search warrant—and its averments in support—clearly demonstrated that the targeted cell phone was that of

---

[8] *See* Indictment, True Bill Filed No. 55, D.I. 1.
[9] *See* Motion to Suppress, D.I. 53.
[10] *See* Exhibit A to Motion to Dismiss, ¶¶ 20-34.
[11] *See id.* ¶¶ 35-47.

his girlfriend. Thus, the search warrant did not sufficiently establish probable cause to search his phone. At the suppression hearing, the prosecutor responded that any incorrect pronouns were merely a scrivener's error, not substantive to warrant suppression. As to the first argument, this Court accepted the State's representations and, as to the second, it based its decision on the law applicable at that time; this Court denied suppression.[12]

After a two-week trial in March 2018,[13] the jury returned its guilty verdicts.[14] On August 2, 2019, Defendant filed a Motion for New Trial,[15] which this Court denied on December 2, 2019.[16] On January 31, 2020, Defendant was sentenced to a mandatory life sentence for Murder First Degree and an additional eleven years incarceration.[17]

On Defendant's direct appeal,[18] the Supreme Court reversed Defendant's convictions and remanded the case for a new trial on the basis that the search warrant used to search Defendant's cell phone constituted an impermissible general warrant.[19]

---

[12] *See* Motion to Suppress Search Warrant Denied, D.I. 59.
[13] *See* Jury Trial Held Before Judge Medinilla, D.I. 77.
[14] *See* Verdict Sheet, D.I. 78.
[15] *See* Motion for New Trial, D.I. 98.
[16] *See* Order for a New Trial is Denied, D.I. 104.
[17] *See* Sentence: ASOP Order Signed and Filed, D.I. 105.
[18] *See* Letter from Supreme Court RE: A Notice of Appeal was Filed, D.I. 106.
[19] *See generally Taylor*, 260 A.3d 602.

During the pendency of the direct appeal, the defense discovered a search warrant for the cell phone of Defendant's girlfriend, Latasha Pierce ("Pierce"), of which a redacted copy had been provided by the State in its initial discovery response.[20] The language of a particular paragraph in that search warrant is identical to a paragraph in the search warrant that targeted Defendant's devices.[21] Upon a closer review of the Affidavit and Application for Defendant's devices, Pierce's name on the page is obstructed by the Justice of the Peace Court seal stamped on the center of the page.[22]

Based on this discovery, on November 5, 2021, Defendant filed this Motion to Dismiss (the "Motion"), alleging the State misrepresented information to the Court at the suppression hearing. The State filed its response on November 9, 2021. The day before oral arguments were scheduled to be heard, defense counsel noticed that he mistakenly attached the incorrect search warrant to the Motion and substituted the correct warrant in a subsequent letter.[23] Oral arguments were heard on March 4, 2022. This matter is now ripe for decision.

---

[20] *See* Exhibit D to Motion to Dismiss.
[21] *See id.* ¶ 22; Exhibit B to Motion to Dismiss, at Exhibit A, ¶ 23.
[22] Motion to Dismiss, ¶ 11.
[23] *See* Letter from Defense Counsel, D.I. 148.

## CONTENTIONS

Defendant claims a retrial would constitute double jeopardy on the basis of prosecutorial misconduct. Essentially that the prosecutor made an intentional or reckless misrepresentation to the Court that the use of female pronouns in Defendant's warrant was merely a scrivener's error when the prosecutor knew or should have known that the language was copied from another warrant.[24] He further posits he has satisfied the *Hughes v. State*[25] test for prosecutorial misconduct through his Supreme Court remand.[26] Alternatively, he argues he has also satisfied the *Hunter v. State*[27] test by extension through *State v. Bobby Taylor*.[28]

The State's response is brief. It succinctly contends the scrivener's error was "self-evident from the warrant and the Court agreed."[29] It further asks this Court to reject the Motion as meritless. The State elects not to respond to the constitutional arguments raised, nor does it address the claims of prosecutorial misconduct.

---

[24] Defendant argues that the detective who authored a search warrant targeting Pierce's cell phone drafted a paragraph designed to establish a nexus between her device and evidence of an alleged crime. The detective then used the language aimed at Pierce's device and "recycled" it four days later when she applied for a warrant to search Defendant's cell phone. *See* Defendant's Reply to State's Letter Responding to His Motion to Dismiss, D.I. 141, ¶¶ 2-3 [hereinafter Defendant's Reply].

[25] 437 A.2d 559, 571 (Del. 1981).

[26] Motion to Dismiss, ¶¶ 72-73.

[27] 815 A.2d 730 (Del. 2002).

[28] 2019 WL 4647669 (Del. Super. Sept. 23, 2019). This case will be referred to as *Bobby Taylor*, rather than *Taylor*, to avoid confusion with the matter presently before this Court.

[29] State's Response to Defendant's Motion to Dismiss, D.I. 138, at 2.

Finally, the State argues it was the form, not the substance, of the warrant that led to the Supreme Court's reversal and dismissal is therefore inappropriate.[30]

## DISCUSSION

Both the United States and Delaware Constitutions protect the rights of ordinary citizens from double jeopardy.[31] "The underlying idea . . . is that the State . . . should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity . . . ."[32] Under Delaware law, Double Jeopardy provides protection against a second prosecution for the same offense after an acquittal or a conviction, and against multiple punishments for the same offense.[33]

### I.     Double Jeopardy Does Not Attach

Defendant was tried and now after vacatur, he may be tried for that same charge again.

> That in itself poses no double-jeopardy problem, because as the U.S. Supreme Court held in *Ball v. United States*, the Double Jeopardy Clause does not prevent a defendant from being retried for an offense if he succeeds in having his conviction vacated.  [Therefore,] . . . a

---

[30] *Id.*

[31] *See* U.S. Const. Amend. V ("…nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb…."); Del. Const. Art. I, § 8 ("[N]o person shall be for the same offense twice put in jeopardy of life or limb.").

[32] *Blake v. State*, 65 A.2d 557, 561 (Del. 2013) (quoting *Green v. U.S.*, 355 U.S. 184, 187 (1957)).

[33] *See* 11 *Del. C.* §§ 206-210; *Blake*, 65 A.2d at 561.

retrial following vacatur is . . . ongoing jeopardy, not successive prosecution for the same offense.[34]

This should end the analysis. But Defendant asks for further review of the protections and distinctions afforded under both the federal and our state constitutions.

Defendant concedes that under *Oregon v. Kennedy*[35] he has no viable claim under the U.S. Constitution. The federal framework is clear under *Kennedy* that merely because an act before the factfinder (none here) is so unfairly prejudicial as to necessitate a mistrial (none here), this alone does not suffice to bar retrial even when that act was undertaken wrongfully by the prosecutor.[36] Thus, Defendant acknowledges he is afforded no double jeopardy protection under the U.S. Constitution.

Defendant further acknowledges that Delaware's Double Jeopardy Clause is "virtually identical" to the federal Double Jeopardy Clause and follows the same standards.[37] Thus, "it is [also] specific intent by the prosecution to cause a mistrial that the Court must find in order for that resulting mistrial to bar retrial and mandate dismissal."[38]

---

[34] *Grimes v. State*, 188 A.3d 824, 826 (Del. 2018) (citing *Price v. Georgia*, 398 U.S. 323, 326 (1970)).

[35] 456 U.S. 667, 676 (1982).

[36] *Kennedy*, 456 U.S. at 675–76.

[37] *See Hughey v. State*, 522 A.2d 335, 338 n.5 (Del. 1987).

[38] *Bobby Taylor*, 2019 WL 4647669, at *3 (citing *Sudler v. State,* 611 A.2d 945, 948 (Del. 1992) (It is only "[w]here 'the governmental conduct in question is intended to 'goad' the defendant

8

Recognizing no viable claim exists under Delaware's current legal framework, Defendant proposes a novel theory and invites the Court to: (1) reject and lower Delaware's Double Jeopardy intent requirement; (2) modify the procedural application of this lower standard outside the context of a trial; and (3) apply this lower standard in the absence of a mistrial.

Defendant's solution is to look at the 2003 decision of *Poteat v. State*,[39] where the Delaware Supreme Court recognized the similarities in both the federal and state Double Jeopardy clauses but observed that the Court "ha[d] not been called upon to decide whether the federal and state Double Jeopardy provisions are identical in scope in all respects."[40] He states that in the 2019 case of *Parker v. State*,[41] the question remained unanswered,[42] and open for consideration here. The law does not advance Defendant's argument.

To be clear, *Poteat* concerned whether, under the Double Jeopardy Clause, a charge of Aggravated Menacing was a lesser-included offense of Robbery First Degree such that an acquittal on the lesser-included offense prevented the State from

---

into moving for a mistrial…[that] a defendant [can] raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.'")) (quoting *Kennedy*, 456 U.S. at 676).

[39] *Poteat v. State*, 840 A.2d 599 (Del. 2003).

[40] *See* Motion to Dismiss, ¶ 16 (quoting *Poteat*, 840 A.2d at 602 n.3).

[41] 201 A.3d 1181 (Del. 2019).

[42] Motion to Dismiss, ¶ 17 (citing *Parker*, 201 A.3d at 1184 n.5 ("[Defendant] is not clear about whether his claim is based on the U.S. or Delaware Constitution. We proceed under the assumption that he is claiming a double jeopardy violation under only the U.S. Constitution.")) (citing *Poteat*, 840 A.2d at 602 n.3).

retrying him for the greater offense.[43]  That is not this case.  This matter involves ongoing prosecution for the same offense.  Defendant's tour of the history of Delaware's Constitution and considerations for how our constitutional protections have been broader in some instances than its federal counterpart[44] do little to persuade this Court.  The recitation of when a state constitutional violation may be raised by a party under *Jones v. State*[45] is also not persuasive.[46]

Not only is the law well-established, there also exists a procedural problem. The prosecutor's comments took place at a pre-trial proceeding.  Double jeopardy considerations arise when a defendant moves for a mistrial, and these Double Jeopardy clauses to bar retrial apply only when the mistrial was intentionally provoked by the government or the State.[47]  Here, there were no representations made at trial.  Nor did Defendant move for a mistrial.  Nor is the prosecutor alleged to have goaded a mistrial.

---

[43] *See Poteat*, 840 A.2d at 601.
[44] *See* Motion to Dismiss, ¶¶ 15-30.
[45] 745 A.2d 856 (Del 1999).
[46] Defendant argues: "To properly raise a state constitutional violation, a party 'should include a discussion and analysis of one or more of the following non-exclusive criteria: textual language, legislative history, preexisting state law, structural differences, matters of particular state interest or local concerns, state traditions, and public attitudes.'"  *See* Motion to Dismiss, ¶ 31 (quoting *Wallace v. State*, 956 A.2d 630, 637–38 (Del. 2008)).
[47] *See Kennedy* 456 U.S. at 676; *Sullins v. State,* 930 A.2d 911, 916 (Del. 2007) (observing this includes causing mistrial by intentional violations of due process that goad defendant into seeking a mistrial).

Defendant fails to provide Delaware authority as to why this Court should consider the application of double jeopardy in a pre-trial context in the absence of a mistrial caused by intentional state action. The Court rejects the proposal that we follow Pennsylvania's lead where certain courts have either relaxed the intentional standard or have considered prosecutorial misconduct in the absence of a mistrial.[48] Defendant's reliance on these cases does little to support his argument. The unique circumstances presented in those cases are not present here and he fails to convince this Court that our Double Jeopardy standards should be lowered as presented.

## II.    No Basis to Consider Prosecutorial Misconduct

Defendant next contends that the prosecutor's actions at the suppression hearing were intentional or reckless to support a finding of prosecutorial misconduct. He argues that this Court should find prosecutorial misconduct on the bases of prior court rulings and order a remedy that does not exist as a matter of law.

Ordinarily, when reviewing a claim of prosecutorial misconduct that was timely raised, the Court utilizes a harmless error standard.[49] Here, the allegations of

---

[48] *See* Motion to Dismiss, ¶¶ 15-35, 40-62; Defendant's Reply, ¶ 15; *see also Commonwealth v. Smith*, 615 A.2d 321 (Pa. 1992) (In the absence of prosecutorial misconduct to provoke the defendant into moving for a mistrial, the State was barred from a second prosecution "when the conduct of the prosecutor was intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial."); *see also Commonwealth v. Johnson*, 231 A.3d 807, 826 (Pa. 2020) (holding the Pennsylvania Constitution provides that "prosecutorial overreaching sufficient to invoke double jeopardy protections includes misconduct which not only deprives the defendant of his right to fair trial, but is undertaken recklessly . . . .").

[49] *See, e.g., Justice v. State*, 947 A.2d 1097, 1100 (Del. 2008).

11

prosecutorial misconduct were not raised at trial nor on direct appeal because the basis of this allegation stems from a discovery made by the defense team during Defendant's pending appeal. Even if timely made, when a such a claim is raised, the Court must conduct a *de novo* review of the record to determine if misconduct actually occurred.[50] If so, the Court must then determine whether a substantial right of the defendant was prejudiced by the improper comments or conduct, applying the *Hughes* test.[51] But here, Defendant argues this Court need not conduct a *de novo* review. Instead, he argues that the Supreme Court's vacatur satisfies the *Hughes* test. This argument is unavailing.[52]

The Supreme Court's holding was limited to a determination that the search warrant used to search Defendant's cell phone constituted an impermissible general warrant.[53] It said nothing about prosecutorial misconduct. Nor did the Court consider whether a substantial right of the defendant was prejudiced by anything related to the comments or conduct of the prosecutor. Defendant fails to establish

---

[50] *Id.*

[51] *Id.* at 1101. If prosecutorial misconduct is found, Delaware Courts determine the prejudicial affect by applying the three factors established in the *Hughes* test: "the closeness of the case, the centrality of the issue affected by the (alleged) error, and the steps taken to mitigate the effects of the error." *Hughes*, 437 A.2d at 571.

[52] Defendant argues the Supreme Court reversal essentially operated as a *de facto* finding to satisfy the *Hughes* test because the Court "[could not] conclude beyond a reasonable doubt that the jury's verdict would have been the same without the illegally seized smartphone evidence" and further noted that "the jury convicted [him] on all charges related to the crimes where the State presented evidence from the [smart phone] extraction report," finding "[t]he smartphone evidence was critical to the State's case and Taylor's convictions." *See Taylor*, 260 A.3d at 618.

[53] *See generally id.*

how the Supreme Court's decision related to the validity of a search warrant satisfies the *Hughes* test.

Defendant's argument that he has established a pattern of misconduct under *Hunter* is equally without merit.[54] He argues the *Hunter* "pattern of misconduct" is established by two events: (1) the comments of the prosecutor to this Court in Defendant's 2018 suppression hearing; and (2) a subsequent cross-examination conducted by the same prosecutor in 2019 in the case of *State v. Bobby Taylor*.[55]

In *Bobby Taylor*, that Court limited its review to whether a mistrial was intentionally provoked by the State and considered only whether double jeopardy barred retrial due to the prosecutor's cross-examination of Defendant. Even after that Court granted a mistrial, it found no double jeopardy bar and denied the motion to dismiss because there was no evidence that the prosecution's conduct was an intentional attempt to achieve a mistrial.[56] Importantly, though the Court castigated the prosecutor, it never determined the prosecutor committed prosecutorial misconduct under *Hunter* or *Hughes*.[57]

---

[54] The Supreme Court found that various statements made by the prosecutor *during trial* warranted a finding of prosecutorial misconduct after a *Hughes* analysis failed to find that reversal was appropriate. There, the court found "a persistent pattern of prosecutorial misconduct," such that "the integrity of the judicial process was compromised," requiring reversal. *Hunter*, 815 A.2d at 737–38.

[55] 2019 WL 4647669 (Del. Super. Sept. 23, 2019).

[56] *See id.* at *5.

[57] *See id.*

For the same reasons that the Supreme Court's vacatur cannot satisfy the *Hughes* test, nor can the *Bobby Taylor* ruling—decided after the 2018 suppression hearing—establish a "pattern" of misconduct under *Hunter*. Even if the Court conducted a *de novo* review of the record, at best all that can be said is there was a mutual mistake discovered years later and both sides were operating under the assumption that the search warrant submitted for review was Defendant's. This does not translate into a finding of misconduct against the State. The analysis ends here. No further analysis is required under *Hunter* or *Hughes*, and Defendant's reliance on either case as presented is misplaced.

### III. Remedy Has Been Afforded

Lastly, even if prosecutorial misconduct had been found, the relief of a new trial available under either *Hughes* or *Hunter* has already been afforded here.[58] Defendant's insistence that he is entitled to the remedy of dismissal—not just retrial—is inconsistent with Delaware law.

The Delaware Supreme Court in *State v. Robinson*[59] addressed the remedy of dismissal even upon a finding of "egregious" State misconduct.[60] Though the

---

[58] The relief available under either a *Hunter* or *Hughes* analysis is limited to reversal and a new trial. *See Hughes*, 437 A.2d at 566–73 (remanding for a new trial after finding prosecutorial errors substantially affected the defendant's right to a fair trial); *Hunter*, 815 A.2d at 738 (reversing the conviction following a finding of prosecutorial misconduct which compromised the judicial process); *Trala v. State*, 244 A.3d 989, 998–99 (Del. 2020) (discussing the ability to reverse under the *Hughes* and *Hunter* tests).
[59] 209 A.3d 25 (Del. 2019).
[60] *See id.* at 58.

prosecutorial misconduct there involved a Sixth Amendment violation of defendant's attorney-client privilege,[61] the Supreme Court determined that dismissal of the indictment was inappropriate where "[a] remedy less severe than dismissal" would ensure the defendant's "right to a fair trial [was] protected."[62] Any relief therefore "'should be tailored to the injury suffered and should not unnecessarily infringe upon society's competing interest in the administration of criminal justice.'"[63] For these reasons, where the relief of a new trial has been afforded, Defendant fails to establish a legal basis to warrant dismissal.

## CONCLUSION

Defendant's request to meld various legal theories and methods and have this Court serve as a catalyst to create a new body of law is reminiscent of a bad experiment. The Court would need to dissect the "intent" requirement out of Delaware's Double Jeopardy analysis and replace it with a lesser standard. Next, it would need to implant double jeopardy analyses in pre-trial court proceedings without the necessary trial prerequisites to include mistrial or intentional goading caused by prosecutorial conduct.

Then, the Court would need to transplant Defendant's vacatur to establish intentional or reckless prosecutorial misconduct under the *Hughes* test.

---

[61] *See id.* at 54–55.
[62] *Id.* at 59.
[63] *Id.* at 61 (quoting *Bailey v. State*, 521 A.2d 1069, 1084 (Del. 1987)).

15

Alternatively, the Court would need to bolt remnants of dictum from the subsequent decision of *Bobby Taylor* in order to find a pattern of intentional or reckless prosecutorial misconduct under *Hunter*. These Shelleyan[64] theories, though creative, cannot survive for the reasons stated. Therefore, Defendant's Motion to Dismiss is **DENIED**.

 **IT IS SO ORDERED.**

 <u>**/s/Vivian L. Medinilla**</u>
 Vivian L. Medinilla
 Judge

cc: Prothonotary

---

[64] *See* MARY SHELLEY, FRANKENSTEIN; OR, THE MODERN PROMETHEUS (Lackington, Hughes, Harding, Mavor & Jones, 1st ed. 1818).